Merrimack,  
June 5, 1917.

### CLARENCE L. CLARK *v*. BOSTON & MAINE RAILROAD.

P. S., *c*. 159, *s*. 29, making railroads liable for damage to persons or property from fire set by locomotives applies to persons and property exposed to damage along the line of the railroad and not to a fireman of a municipality whose exposure and injury result from his attempt to extinguish the fire.

A wrongdoer is not liable for injury received by an intervenor, who attempts to rescue property endangered by the unlawful act, if he is one to whom the wrongdoer owes no legal duty.

CASE, for injuries alleged to have been caused to the plaintiff by a fire set by the defendant's locomotive. The first count alleged a right of recovery under the statute imposing liability upon railroads for damages caused by fires set by locomotives. There is also a general count for negligence and one setting out that the plaintiff was a member of the Concord fire department and received his injuries while acting in that capacity attempting to extinguish the fire. A specification filed later shows that the first count is for the same alleged wrong.

The defendant's demurrer was transferred without ruling by *Sawyer*, J. from the October term, 1916, of the superior court.

*Robert W. Upton*, by brief and orally, for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. Jonathan Piper* orally), for the defendant.

Peaslee, J. The declaration, and the specification of facts applicable to the first count, show that the plaintiff's claim rests upon the theory that a fireman employed by a municipality to extinguish fires may recover from the party whose act caused the fire. It is not necessary to consider whether a recovery might be had if the fire had been designedly set, with the intent to injure the plaintiff, for his claim is based upon the statutory liability of railroads, or upon negligence.

The statute making a railroad liable for damage to person or property from fires set by its locomotives (P. S., *c.* 159, *s.* 29) has no application to the present case. That act applies only to those so situated that as to them the operation of the railroad constitutes an extra fire hazard. If the act is broad enough in its terms so that it could have been construed to include all damage that could in any sense be deemed to be "caused" by the defendant, it is settled that such was not the legislative intent. *Welch* v. *Railroad,* 68 N. H. 206, is conclusive on this issue. If the statute covered the present case the plaintiff in that case would have recovered. The loss there was caused by a fire set by the defendant; but because the plaintiff's property was in the custody of the defendant as a bailee, it was held not to be within the class contemplated by the legislature. While this conclusion rests in part upon the language of the act giving the railroad "an insurable interest in all property situate on the line of such road, exposed to such damage" (G. L., *c.* 162, *s.* 9; P. S., *c.* 159, *s.* 30), the reasoning is not inapplicable in determining the meaning of the related provision as to "damages to any person." The declaration of liability is in no way differentiated. There was occasion to express the understood limitation as to one class, and it is not to be presumed that the unexpressed intent was different as to the other class. The statute applies to persons and property exposed to damage along the line of the road. It does not apply to firemen or fire engines whose exposure results from an attempt to extinguish the fire.

As the statute has no application, the rights of the parties are determined by the common law rules governing actions to recover for negligence. Authorities holding that a volunteer rescuer of persons or property may recover from a third person whose negligence caused the situation inducing the volunteer to act, are relied upon by the plaintiff. It is also contended that his contract of employment as a city fireman gives him a standing more favorable to him than that of the volunteer. The case has been largely argued

upon the issue of proximate cause, in furtherance of the first of these claims. But that question does not arise unless the defendant's act bore some legal relation to such a volunteer. The question here is not one of proximate or remote cause, but whether the defendant owed any duty at all to the plaintiff,—whether, apart from his contract of employment, it stood in any legal relationship to him, however remote. It seems to us that it did not. Neither the plaintiff nor his property was in a position to be injured by a fire set by the defendant. His connection with the fire arose solely from his own act in coming into contact with it after it was set. It is the law of this state that as to such intervenors the defendant who created the situation owed no anticipatory duty. *McGill* v. *Company*, 70 N. H. 125. The situation is much like that of the landowner and a licensee. So long as no intentional injury is done, and no negligent act after the licensee is present, there is no liability. *Hobbs* v. *Company*, 75 N. H. 73. The cases from other jurisdictions holding that there is a legal liability in such a case rest upon the ground that the intervenor had a moral right, if not a moral duty, to make the attempt to save life or property; and because it may be assumed that men will do their moral duty, it is argued that the defendant is bound to consider the probabilities as to their subsequent and morally induced conduct. The defect in this reasoning is that it substitutes moral rights and duties for those recognized and regulated by law. As to the intervenor the defendant's previous conduct is wrong only in the sense that it is a wrong to society at large. It may be a moral wrong and may be punishable on behalf of the public; but it is not a private legal wrong to individual members of the public, who of their own motion undertake to lessen the evil effects of the defendant's dereliction from duty. The good Samaritan could not recover from the thieves the value of the oil and wine which he poured into the wounds of the traveler to Jericho. His recompense is the same today that it always has been. Unless it be true that courts can give relief in damages for a mere infraction of a code of morals, the plaintiff's argument has no weight. That courts are not empowered so to act in this jurisdiction is too well settled to require discussion. *Frost* v. *Railroad*, 64 N. H. 220; *Buch* v. *Company*, 69 N. H. 257. If legal liability is to be extended so as to cover this new field, the change must be made by the legislature.

The plaintiff's argument that the test laid down in *Garland* v. *Railroad*, 76 N. H. 556 is applicable in his favor, fails in an essential

element.   It is not true that, apart from his contract with the city, the defendant ought to have known that the plaintiff would be in a position to be injured by what it did.   He was not in such position. He does not so state in his declaration.   What he did was to put himself in such position after the defendant ceased to be an actor, and because a fire was in progress.   He did not come upon the fire accidentally, or in the course of independent and lawful conduct, nor did the fire come upon him while he was so circumstanced. Such right as he had to be an actor in this matter grew out of the fact that there was a fire.   It was not a right whose exercise the fire interfered with.   While in a certain sense the fire may be said to be a cause of the plaintiff's injury, it does not follow that therefore the defendant's negligence was a breach of any duty the defendant owed to him.   "The tortious nature of defendant's conduct and the causative effect of that conduct are entirely distinct matters; and what is a requisite element as to the first subject is not necessarily so as to the second."   Jeremiah Smith in 25 Harv. Law Rev. 245.   In *Garland* v. *Railroad, supra,* the defendant's act undoubtedly caused the injury, yet it was no breach of a duty owed to the party who was injured.

The discussion in *Kambour* v. *Railroad,* 77 N. H. 33, touching the rights of certain classes of people who encounter known danger, is not germane to the present case.   That discussion relates to the acts of a plaintiff to whom a duty is owed, who knows the duty has been violated by the defendant.   It is not authority for the proposition that fault as to one party constitutes a wrong to a third person who knows of the wrong and voluntarily seeks to remedy it. The citation there of cases permitting volunteer rescuers to recover was only for the purpose of showing that the maxim *volenti non fit injuria* was not generally considered to be a rule of universal application in the law of negligence.   The question whether these cases were good law was not involved, and there was no attempt to pass upon it.   Nor is it necessary to now consider this aspect of them. It is enough for the present case to say that even if the voluntary character of the act does not amount to an assent to the result, such act is not of a character to raise an anticipatory duty on the part of those not otherwise related to the actor to take care to avoid furnishing him an opportunity to act.

The other claim suggested is that because the plaintiff was employed to extinguish fires he stands differently from a volunteer and may recover when a volunteer could not.   But if it be assumed that

his contract of employment brought him into a legal relation to the defendant and to its conduct in setting the fire, he is no better off. If his contract with the public created a relation to the individual member thereof, the relation created is such as the parties contemplated. It appeared to the public desirable to reduce the fire losses of its members by providing for the extinguishment of fires. The contract with the fireman is for the benefit of those who would be damaged by the fire. The agreement so made differs in no respect essential to this case from the ordinary contract of insurance. That is, the plaintiff has agreed to undertake to lessen the fire damage which would otherwise fall upon the defendant. It is argued that this relation exists only as between the fireman and the party whose property is in danger of being consumed by the fire. But this is much too narrow a view. If a relation arises at all, it is one to all members of the public whose interests or liability are involved by the fire. This is the common sense view of the situation. The plaintiff, knowing that fires will occur from various causes, some culpable and some not, undertakes the work of extinguishing all fires without reference to how they were caused. The chance of injury in doing such work is necessarily assumed by him. This assumption arises from the nature and terms of the contract he made. He agreed to fight all such fires as should occur. There is in his contract no distinction as to how the fires originated. If his contract has any bearing at all upon the relation of the parties, it establishes an express assumption of the risk here involved, and bars any recovery therefor. The rule that one may not contract against the consequences of his own future negligence has no application. This is merely an undertaking of one not otherwise related to the situation, to bear for the defendant the consequences of its fault. The defendant is not thereby released from any liability imposed upon it by law. The agreement is like any insurance contract, and its validity is not open to question. Whether, then, the plaintiff is treated as a volunteer or as one whose contract of employment brought him into a legal relation to the defendant, the result is the same. In neither case was there a breach of any duty owed to him by the defendant.

*Demurrer sustained.*

All concurred.