LANDRY, Judge.
Allied Chemical Corporation and its liability insurer, The Travelers Insurance Company, appeal the judgment of the trial court awarding plaintiff, Emanuel J. Lang-lois, a fireman employed by the City of Baton Rouge, damages for personal injuries sustained by inhalation of gas that escaped from Allied’s plant in Baton Rouge. Plaintiff answered the appeal seeking an increase in the award for personal injuries. The Parish of East Baton Rouge intervened in the action which was originally brought against the City. Intervenor, acknowledging liability for the operation of the fire department, sought recovery of compensation benefits and medical expenses paid plaintiff. Plaintiff’s action against the City has been voluntarily dismissed. We find that the trial court erred in rejecting appellants’ defense of contributory negligence and reverse the judgment rendered in favor of plaintiff and intervenor.
On February 23, 1967, plaintiff, whose temporary classification was fire truck driver, together with other fireman, answered a call for assistance to two employees of a concern known as Delta Southern, which employees were allegedly trapped in a tank because of gas that ex-caped from an unknown source. Upon arriving at Delta’s premises, it was learned the trapped men had been extricated. After remaining on Delta’s premises for approximately five minutes, plaintiff and the other members of the engine crew returned to their station which route required their passing through areas where the escaping gas had accumulated on the city streets. At the station plaintiff was again subjected to exposure to the gas as he was washing the fire truck after completing the mission. It is undenied that plaintiff sustained severe respiratory tract damage as a result of his inhalation of the gas under the circumstances indicated.
Defendants maintain the trial court erred in rejecting their defense of assumption of risk under the rule that a fireman assumes the risk of dangers incident to the performance of his duties. Appellants also contend the trial court erred in rejecting its contention that plaintiff was contributo-rily negligent in not using available safety devices notwithstanding plaintiff’s special training and knowledge. Plaintiff argues, however, that if the assumption of risk rule applies in this state, it is not pertinent herein because plaintiff was not engaged in the act of fighting a fire. Plaintiff also contends that defendants’ liablity results from LSA-C.C. art. 177 which renders an owner liable for damages caused the public by whatever is thrown from or permitted to escape from his premises. In this regard, it is argued that since plaintiff was not on Allied’s premises in the act of attempting to stop the escape of gas, but was engaged in a rescue mission on adjoining premises, plaintiff should be regarded only as an ordinary layman and not a fireman. Plaintiff also urges defendants’ liability pursuant to LSA-C.C. arts. 667, 2317 and 2322. Article 667, above, makes a proprietor liable for any work on his premises which may damage his neighbors. Article 2317 imposes liability upon one for things in his custody, while Article 2322, above, makes the owner of a building answerable for damages occasioned by its ruin which has resulted from failure to repair or a vice in original construction.
On the day in question, plaintiff drove the fire engine to Delta’s premises accompanied by his superior, Captain Donald Ar-ceneaux, and three other firemen. The trip was in response to a radio appeal for breathing equipment to assist two Delta employees trapped in a tank. The fire truck contained breathing equipment known as a Scott Air Pack which consisted essentially of a full face mask connected by a hose to a metal air supply tank that is carried on the wearer’s back by means of *44 shoulder straps; it measures approximately 15 inches long and 10 inches in circumference. The truck in question was rather old. It was operated by means of a clutch and gear shift. The cab of the truck was sufficient only to accommodate the driver and one passenger.
It is disputed whether plaintiff knew upon leaving the station that there was gas escaping from defendant’s premises. We find, on the basis of the evidence hereinafter discussed, that plaintiff and his crew knew the source of the trouble being investigated was gas escaping from an unknown source.
In essence Joseph Edgar Lejeune, Sr., Fire Chief, testified that he received a call for assistance over his automobile radio to the effect that two men had been trapped in a tank at Delta and overcome by gas that escaped from neighboring premises. On arrival at the scene he found the trapped men had been extricated. He noted that gas in the form of a white fog or mist blanketed a large surrounding area. He considered the possibility of blocking the area to traffic until the nature of the gas could be ascertained. He remained on the premises approximately 30 minutes but was unable to learn the precise nature of the gas. He noted that the gas made his eyes sting or smart and his throát tickle. He did not, however, use a protective mask because, although he found the gas mildly irritating, he had no difficulty breathing and did not consider this safety device necessary. Shortly after Lejeune’s arrival, Captain Arceneaux and his crew arrived. Chief Lejeune noted that of the numerous persons in the area none wore any protective clothing or equipment. Chief Lejeune also observed that each man is trained in the use of air packs and taught to use them in his individual discretion if it was thought necessary. He also explained that it was customary not to order firemen to don air packs, the rule being that each fireman upon encountering gas or smoke should determine his own level of tolerance. Lejeune further stated he later learned the gas was antimony chlorine. Chief Lejeune also explained that the air packs were not designed for use while driving a vehicle because it would be extremely difficult for a driver to sit while wearing the device. He also stated that he would not permit a driver to use an air pack because it would materially impede vision.
William A. Brumfield, District Fire Chief, was also present at Delta Southern when the incident occurred. He observed visible gas coming from the adjacent premises of Allied. The gas irritated his eyes and throat but he did not consider it sufficiently irritating to use the air pack that was in his nearby automobile. He also stated that shortly after Arceneaux’s arrival, he told Arceneaux his crew would not be needed whereupon Arceneaux and plaintiff left to return to their station. Mr. Brumfield stated that while it was possible for a fireman to drive an engine with an air pack on, he would not recommend this procedure. He verified the fact that upon returning to the station, plaintiff encountered gas which had drifted into that vicinity. Mr. Brumfield also testified that a fireman is trained to take precautions against gas when gas is present, especially if it is not known what particular kind of gas is present.
Plaintiff’s immediate superior, Captain Donald J. Arceneaux, accompanied plaintiff on the day in question. He stated that their mission was to rescue two men who had been trapped in a tank and overcome by gas. He also stated the truck remained on Delta’s premises about five minutes during which time the gas which covered the entire area burned his eyes and caused his throat to tickle. He noted that no one at the scene used air packs and neither did he because he did not find the resultant irritation particularly serious. He further stated that gas was encountered on the return trip and again at the fire station when a shift in wind direction caused gas to drift to the firehouse. He also noted that the gas irritated and choked the men *45 at the fire station to the extent they sought refuge inside.
J. W. Parker, Training Officer, Baton Rouge Fire Department, testified that he had trained plaintiff Langlois. He noted that the first rule in training is that a fireman is to assume the worst and protect himself first and then do what he can for others. He explained that use of protective equipment is a matter of judgment to be exercised by each individual according to the circumstances. He also explained that training manuals, with which plaintiff was familiar, suggest that an air pack be worn if necessary even though it might decrease efficiency because a fireman working under decreased efficiency is more valuable than one not working at all.
Plaintiff concedes the gas was visible upon arriving at the scene. He also acknowledges he did not know the nature of the gas encountered. Plaintiff also acknowledged that the gas irritated his eyes and throat but that he did not wear an air pack and neither did anyone else present. Plaintiff also stated that he remained in the area only a short time. He acknowledged that on the return trip he told Captain Arceneaux that the gas was adversely affecting him but urged that they not stop even though they were passing through clouds of gas on the city streets. Plaintiff conceded that an air pack would interfere with his driving the truck. He also acknowledged that while he was washing his truck at the station upon returning from the mission, gas drifted into the area causing him to cough and that he sought refuge inside the station but did not put on his air pack which was in his truck. Plaintiff also conceded he knew the gas was an irritant substance and was likely to injure his respiratory tract.
As contended by appellants, it appears to be the general rule that firemen assume the risks ordinarily incident to their entry upon premises made defective by fire. McGee v. Adams Paper and Twine Co., 26 A.D.2d 186, 271 N.Y.S.2d 698; Chesapeake & Ohio Ry. Co. v. Crouch, 208 Va. 602, 159 S.E.2d 650; 55 A.L.R.2d 525, Danger to Licensees — Warning.
It appears, however, that all jurisdictions impose on an owner the duty of warning firemen of extraordinary risks of hidden perils about which they might be easily warned and which perils are created by the owner by negligence or omission not related to the fire itself. Thus, where a warehouse collapsed during a fire because of a defect in its construction, firemen injured thereby were held not to have assumed such a risk. Shypulski v. Waldorf Paper Products Company, 232 Minn. 394, 45 N.W.2d 549. Similarly, a fireman who fell into a hole in a path leading to defendant’s burning barn, was permitted to recover for his injuries. Meiers v. Fred Koch Brewery, 229 N.Y. 10, 127 N.E. 491, 13 A.L.R. 633.
We find no case in point in our own jurisprudence dealing with alleged assumption of risk by a fireman acting within the scope of his duties. However, we do note a somewhat analogous case in which a police officer sued his employing entity for injuries suffered in the performance of his official duties, namely, Spalding v. City of Jefferson, 27 La.Ann. 159, In a succinct opinion, the court held that the officer assumed the risk when he accepted the position as policeman.
We believe the majority rule to be sound in holding that a fireman assumes the risks ordinarily incident to entering a burning building in the performance of his duties as well as those ordinarily incident to performance of other duties for which he has been trained. We are also of the view that since a fireman is an invitee entering premises at least with the implied permission and consent of the owner whose property he is trying to save, he is entitled to be informed and protected against extraordinary hidden dangers of which he might be warned. Each case, of course, must be determined in the light of its own peculiar facts and circumstances.
*46 In view of the recent Supreme Court decision in Reymond v. State Department of Highways, 255 La. 425, 231 So.2d 375, plaintiff may not recover herein under LSA-C.C. art. 667. Reymond, above, clearly states that the effect of Article 667 is limited to damages caused by the existence of structures on one’s land. Reymond also holds beyond question that damages resulting to adjoining properties from construction, erection or building processes, as such, may not be recovered under the authority contained in Article 667, above. While Reymond also expressly states it does not overrule the long line of authorities which theretofore permitted an adjoining owner to recover for damages to his property from construction processes on neighboring lands, such recovery may be permitted on some other theory but not upon the liability imposed upon an owner pursuant to Article 667. Neither could plaintiff’s recovery herein be based on LSA-C.C. art. 2322 which makes an owner answerable for damages occasioned by ruin of his buildings caused by his neglect or failure to repair. It appears that if plaintiff has a remedy herein it is pursuant to LSA-C.C. art. 177, or Article 2315, our general tort law, or Article 2317.
The trial court held that under the circumstances defendant was liable irrespective of fault and that plaintiff enjoyed the status of an ordinary citizen because plaintiff was not in the act of combating a fire. On this basis, he rejected appellants’ defense of assumption of risk. He also exonerated plaintiff from contributory negligence primarily on the ground that plaintiff’s superiors, as reasonable men, had not seen fit to utilize protective masks during their exposure to the gas. In this court, in both oral argument and brief, plaintiff contends the trial court was correct in determining the issue upon which this case turns as well as in the decision reached thereon. In this regard, counsel for plaintiff points out that plaintiff was never on defendant’s premises.
Conceding, for argument’s sake, that the assumption of risk doctrine urged herein by defendants is inapplicable herein on the grounds asserted by plaintiff, we nevertheless find that plaintiff’s recovery is barred by his contributory negligence in the respects hereinafter shown.
Contributory negligence is conduct on plaintiff’s part which falls below the standard to which he should conform for his own safety and welfare, which means that standard of care which a reasonably prudent person would exercise under the same or similar circumstances. Henson v. Travelers Insurance Co., La.App., 228 So.2d 667.
Contributory negligence is measured by the same tests as primary negligence and depends upon the particular facts and circumstances of each individual case. Theunissen v. Guidry, 244 La. 631, 153 So.2d 869.
As pointed out in Prosser, The Law of Torts, 1941 Edition, page 377, assumption of risk is more properly applicable in situations where plaintiff, with full knowledge of a peril, voluntarily enters a relationship with defendant involving danger to plaintiff because of defendant’s contemplated conduct, the choice being made by plaintiff under circumstances implying consent to relieve defendant from liability for the proposed conduct. Contributory negligence, however, envisions unreasonable conduct on plaintiff’s part in the face of a known or reasonably foreseeable danger. The contributory negligence rule does not require that plaintiff’s conduct necessarily imply consent to relieve defendant of responsibility. Recovery is denied on the ground of contributory negligence because the plaintiff’s own unreasonable conduct has causally contributed to his loss or injury. See Laney v. Stubbs, La.App., 217 So.2d 468.
We find as a fact that plaintiff herein knew upon leaving the firehouse that he *47 was called to assist in a rescue mission made necessary by gas escaping from an unknown source. Upon arriving at the scene, plaintiff immediately became aware that gas was present in the vicinity. It could be seen by all present. Neither plaintiff nor anyone else present knew the type of gas involved. That the gas possessed irritant qualities became immediately known to plaintiff. His eyes began to water, his throat commenced tickling and he started coughing. The record establishes beyond doubt that plaintiff’s training had taught him his first consideration should be for his own protection not only for self-preservation, but also because only in this way could he be of service to others. It also appears that plaintiff’s training taught that when encountering gas, expe-cially gas of an unknown type, plaintiff should assume the worst and take precautionary measures to guard against being overcome. It also appears that plaintiff had at his disposal safety equipment designed to protect him against the effect of smoke and harmful gases. In addition, the manuals used in plaintiff’s training expressly warn that irritant gases can damage the respiratory tract and therefore precautions should be taken when such substances are encountered. When plaintiff encountered the unknown irritating gas on Delta’s premises and experienced the reactions noted, it then became incumbent upon him to use an available air pack for his protection.
We find no merit in the argument that plaintiff’s failure to use an air pack was reasonable in view of the fact that his superiors, and all others present, apparently did not see fit to utilize such equipment. It is contended that since the Fire Chief and District Chief, who must be deemed reasonably prudent individuals, did not use protective devices, it was not unreasonable for plaintiff to do likewise.
We answer this contention by first noting that plaintiff was trained and taught to use his own judgment in such matters and determine his own level of tolerance. When the irritating effect of the gas became apparent to plaintiff, as a reasonable individual, his training should have prompted him to use an air pack for protection regardless of what someone else did. His training taught him that irritating gases could damage his respiratory tract and he knew that this unknown substance was irritating to him. That he was not immediately overcome is a matter of no moment. We next note that, under the circumstances, it would appear that plaintiff’s superiors likewise disregarded a basic training rule. That the others involved apparently suffered no physical damage does not, however, relieve plaintiff of the consequences of his own failure to exercise reasonable care. We are not here dealing with an ordinary citizen or pedestrian trapped in or passing through a gas infested area of a municipality. Here we are concerned with a trained fireman having express knowledge of the dangers incident to the situation in which he found himself. He had available protective equipment which he had been instructed to use when necessary. His failure to take precautions against the known danger constitutes contributory negligence which bars his recovery.
It also appears from the evidence that if plaintiff had chosen to wear an air pack, his superiors would not have objected. The testimony likewise supports the inference that had plaintiff elected to put on an air pack, someone else would have driven the truck back to the fire station. It is also shown that while en route back to the station, plaintiff, upon passing through a cloud of gas, remarked that the gas was giving him difficulty but that he would not stop as he wanted to get out of the area. When plaintiff again encountered the gas at the fire station, it would have been a simple and easy matter for him to put on an air pack for protection. Considering plaintiff’s training, knowledge and experience, his failure to protect himself against a known danger was unreasonable conduct *48 constituting contributory negligence under the circumstances shown.
The judgment of the trial court is reversed and judgment rendered herein in favor of defendants. Allied Chemical Corporation and The Travelers Insurance Company, rejecting the demands of plaintiff, Emanuel J. Langlois, and intervenor, the Parish of East Baton Rouge, with prejudice. All costs of these proceedings for which the Parish of East Baton Rouge may be legally cast shall be paid jointly by plaintiff, Emanuel J. Langlois, and the Parish. All remaining costs to be paid by plaintiff Langlois.
Reversed and rendered.