(Nos. 49672, 49674 cons)

ARTHUR J. COURT, Appellee, v. FELIX GRZELINSKI, JR., *et al.*—(Nickey Chevrolet Sales, Inc., *et al.*, Appellants.)

*Opinion filed July 14, 1978.*

RYAN, J., WARD, C.J., and UNDERWOOD, J., dissenting.

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Joseph B. Lederleitner and Robert Marc

Chemers, of counsel), for appellant Nickey Chevrolet Sales, Inc.

Forrest L. Tozer, Michael Davis, and Richard E. Mueller, of Lord Bissell & Brook, of Chicago (Frazer F. Hilder, of Detroit, of counsel), for appellant General Motors Corporation.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago (Nat P. Ozmon and Mark Novak, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The plaintiff, Arthur J. Court, brought an action in the circuit court of Cook County against defendants, Felix Grzelinski, Jr., Nickey Chevrolet Sales, Inc., and General Motors Corporation. He seeks recovery for injuries sustained while fighting a fire which erupted in a vehicle owned by Grzelinski, sold in used condition by Nickey and manufactured by General Motors. Count I of plaintiff's fourth amended complaint is predicated upon Grzelinski's negligence in keeping containers of a highly flammable substance hidden from view in the vehicle. Count II jointly charges Nickey and General Motors in a strict liability action arising out of the explosion of the vehicle's gasoline tank.

On motions duly filed and consolidated, the trial court denied Grzelinski's motion to dismiss count I and, pursuant to the holding in *Erickson v. Toledo, Peoria & Western R.R.* (1974), 21 Ill. App. 3d 546, sustained Nickey's and General Motors' motions to dismiss count II. The trial court having expressly found no just reason for delaying enforcement or appeal of the order of dismissal, the plaintiff, pursuant to Rule 304(a) (58 Ill. 2d R. 304(a)), appealed the dismissal of count II. The appellate court reversed the trial court, holding that count II properly states a cause of action in strict liability against

Nickey and General Motors for the injuries which plaintiff sustained while fighting a fire in the course of his employment. (48 Ill. App. 3d 716.) We granted leave to appeal to Nickey and General Motors (defendants).

The issues presented for review are: (1) Does plaintiff's complaint properly plead that defendant Nickey, a used car dealer, created the alleged defects in the vehicle's gasoline tank? and (2) Is a duty in products liability owed to a fireman for injuries incurred while fighting a fire in the course of his employment?

During pretrial discovery it was ascertained that on May 26, 1972, plaintiff, a firefighter for the city of Chicago, responded, along with other firemen, to a call of an automobile fire on south Harding Avenue in Chicago. As plaintiff attached the fire hose to a hydrant approximately 35 feet from the vehicle (a 1969 Chevrolet Malibu), an explosion caused ignited gasoline to be spewed from the vehicle's gas tank onto the plaintiff. As a result, plaintiff sustained severe burns, externally and internally.

Defendant Nickey asserts that plaintiff's complaint is deficient in that it fails to plead that the alleged defects in the vehicle's gasoline tank were created by Nickey. Nickey relies on *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, in which this court held that a plaintiff fails to state a cause of action against a used car dealer in products liability if he does not allege that the defects were created by that dealer. There, the plaintiff had failed to allege either that the defects existed when the product left the control of the manufacturer or that the defects were created by the used car dealer. The instant complaint, however, includes allegations that the gasoline tank was defectively designed by the manufacturer, thereby creating a "high degree of risk that [it] would explode," and that the tank was defectively assembled, installed and positioned by Nickey in that no adequate devices were used which would prevent the tank from

exploding. At this stage of the proceedings, all well-pleaded allegations of the complaint must be taken as true. To the extent that plaintiff alleges that the defects were created not only by the manufacturer, but also by work defectively done by Nickey, his complaint satisfies the requirements of *Peterson.* See *Realmuto v. Straub Motors, Inc.* (1974), 65 N.J. 336, 344, 322 A.2d 440, 444.

It is essential to this appeal that we determine if a fireman can recover in products liability for injuries incurred while fighting a fire in the course of his employment. Defendant General Motors has correctly reasoned that the case turns on the question of "duty." Generally, in tort law, "duty" is the legal standard of conduct owed by one person to another. In the products liability context, a legal duty is imposed upon those involved in the original production and marketing chain of a product to the benefit of those individuals "to whom injury from a defective product may reasonably be foreseen." (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 11.) We have held that, in products liability, such individuals are not only those within classes of users and consumers, but may include persons (such as the innocent bystander) outside the purchasing chain of the product. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 11-13.) Whether a particular fireman fighting a fire in the course of his employment is a person to whom injury from a defective product may reasonably be foreseen is ordinarily an issue of fact to be resolved not by the court, but by a jury.

Nevertheless, defendants maintain that firemen are a special class of plaintiff to whom no duty is owed, even if injury to them may reasonably be foreseen, because risk of harm resulting from fire (and consequent explosion) is inherent in the occupation for which they are trained and paid. Defendants' thesis, commonly known as the "fireman's rule," is founded in negligence and derives from numerous cases, in this and other jurisdictions, which rest

on two distinguishable propositions. The more common of the two propositions is that a *landowner or occupier* owes no duty of care to firemen to prevent the fire which necessitated their presence on the premises. The other proposition is that a fireman cannot recover *from any defendant* for any injury resulting from those risks inherently involved in fire fighting. The former proposition is firmly established in Illinois law. The latter proposition, which actually subsumes the former and extends the "fireman's rule" to encompass defendants other than landowners or occupiers, is one of first impression in this court.

The "fireman's rule" originated and developed at a time when the English common law classified the duties of landowners or occupiers according to the status of the persons entering the premises: *i.e.,* trespassers, licensees or invitees. At first, firemen who entered the premises in the discharge of their duties were designated "licensees" to whom landowners or occupiers owed no greater duty than to warn of known concealed dangers and to refrain from inflicting willful or intentional injury. (*Gibson v. Leonard* (1892), 143 Ill. 182, 190, overruled in *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417; Prosser, Torts, sec. 60 at 376-382 (4th ed. 1971); 1 J. Dooley, Modern Tort Law secs. 19.01, 19.07, at 375, 387 (1977).) Later courts, recognizing the harshness of this classification, reclassified firemen as "invitees" to whom landowners or occupiers owed a duty of ordinary care to keep the premises safe. (*Clinkscales v. Mundkoski* (1938), 183 Okla. 12, 79 P.2d 562.) Finally, in 1960, this court rejected the common law classifications as applied to firemen, and held that landowners or occupiers owed a duty of reasonable care to maintain their property so as to prevent injury to firemen "rightfully on the premises, fighting the fire at a place where [they] might reasonably be expected to be." (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417.) Thereafter, this

court and numerous appellate courts interpreted the *Dini* case to impose a duty of reasonable care on landowners or occupiers to prevent injury to firemen which might result from a cause independent of the fire, but no duty to prevent injury resulting from the fire itself. *Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 108; *Erickson v. Toledo, Peoria & Western R.R.* (1974), 21 Ill. App. 3d 546, 549; *Young v. Toledo, Peoria & Western R.R. Co.* (1977), 46 Ill. App. 3d 167, 169.

This distinction evolved for two mutually supportive reasons. First, since most fires occur because of the negligence of the landowner or occupier, it was believed that the imposition of a duty to prevent fires from occurring or spreading on a person's premises would place an unreasonable burden upon the person who owned or occupied improved land. (*Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 108; *Horcher v. Guerin* (1968), 94 Ill. App. 2d 244, 248.) This public policy consideration, however, tended to undermine the general duty imposed upon landowners or occupiers to exercise reasonable care to keep their premises safe. A compromise was reached with regard to firemen, recognizing that the risk of harm from fire is inherent in a fireman's occupation. This compromise was believed to provide a necessary social balance between the absolute possessory control of land and the duty of reasonable care to firemen whose public responsibility summons them to the premises. As is apparent, this version of the "fireman's rule" rests not merely upon a recognition that certain risks are normally expected in fire fighting, but upon a policy consideration limiting the duty of landowners or occupiers.

Defendants attempt to extend the "fireman's rule" beyond its limited context of landowner/occupier liability. The rule cannot be expanded to a free-floating proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire fighting. To do so would

be tantamount to imposing the doctrine of assumption of risk onto the occupation of fire fighting and would be directly contrary to the limited concept of assumption of risk in Illinois. In negligence actions, assumption of risk is confined to those situations involving persons who have a contractual or employment relationship with the defendant. (See *Barrett v. Fritz* (1969), 42 Ill. 2d 529, 534; *Sweeney v. Matthews* (1968), 94 Ill. App. 2d 6, 18-20.) In products liability actions such as this, assumption of risk is a bar to recovery only if the plaintiff is aware of the product defect and voluntarily proceeds in disregard of the known danger. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 426; Restatement (Second) of Torts sec. 402A, comment *n,* at 356 (1965).) In either case, assumption of risk is an affirmative defense interposed against a plaintiff who voluntarily exposes himself to a specific, known risk, not a preclusion of recovery against a plaintiff whose occupation inherently involves general risks of injury.

Defendants cite two California appellate court decisions which have approved the broad proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire fighting. (*Giorgi v. Pacific Gas & Electric Co.* (1968), 266 Cal. App. 2d 355, 72 Cal. Rptr. 119; *Scott v. E. L. Yeager Construction Co.* (1970), 12 Cal. App. 3d 1190, 91 Cal. Rptr. 232.) In the earlier of the two decisions, the court cited two cases which had applied the "fireman's rule" in situations outside the limited context of landowner/occupier liability. (See *Clark v. Boston & Maine R.R.* (1917), 78 N.H. 428, 431-32, 101 A. 795, 797; *Chesapeake & Ohio Ry. Co. v. Crouch* (1968), 208 Va. 602, 608-09, 159 S.E.2d 650, 655.) Although both those cases expressly based their holdings on the doctrine of assumption of risk, the California court disclaimed reliance on that doctrine. Instead, it based its holding on two asserted policy considerations—risk spreading and

efficient judicial administration—which have since become the subject of criticism. See Moss, *An Examination of The California Fireman's Rule,* 6 Pac. L.J. 660 (1975).

Risk spreading is based upon the rationale that the cost of injuries to fire fighters should be distributed among the community at large rather than be imposed upon the party responsible for the injuries. Such policy would apply regardless of whether injury to a fireman resulted from the fire itself or from causes independent of the fire. To the extent that, in Illinois, a fireman may recover from a landowner or occupier for injuries resulting from causes independent of the fire, Illinois has failed to recognize risk spreading as a proper basis for denying recovery to firemen.

California would also preclude recovery by firemen because of the potential problems and lengthy trials that might arise with the need for a judicial determination on the cause of a fire. We find this policy consideration unpersuasive for two reasons. First, Illinois law requires that every fire, by which property has been destroyed or damaged, be investigated as to its cause, origin and circumstances. (Ill. Rev. Stat. 1975, ch. 127½, par. 6.) More importantly, courts may not compromise their basic responsibility to decide the merits of each case merely because it would be administratively convenient to sweep away a class of plaintiffs whose claims may be difficult to adjudicate.

Moreover, the limitation on the duty of landowners or occupiers with respect to fires occurring on their premises has no application in a products liability action. Mr. Justice Traynor, in his renowned concurrence which presaged the acceptance of the doctrine of products liability, stated that "public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." (*Escola v. Coca Cola Bottling Co.*

(1944), 24 Cal. 2d 453, 462, 150 P.2d 436, 440; accord *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 618-19.) In furtherance of this public policy, a legal duty is imposed upon those responsible for creating a defective product in favor of any person to whom injury from the product may reasonably be foreseen. It would serve no societal interest to limit this duty by carving out of the class of such persons a subclass of firemen to assume the undue risks of injury inherent in defective products. We therefore hold that, to the extent a fireman is a person to whom injury from the product may reasonably be foreseen, he may recover in products liability, even though his injury was incurred while fighting a fire in the course of his employment. In so holding, we reject the opportunity to extend the "fireman's rule" beyond its limited context of landowner/occupier liability.

For the reasons stated herein, we affirm the judgment of the appellate court and remand the cause to the trial court for proceedings consistent with this opinion.

*Affirmed and remanded.*

MR. JUSTICE RYAN, dissenting:

I must dissent from the majority opinion for two reasons. First, it misconceives and misapplies the "fireman's rule" as previously defined in this State and as followed in "virtually every other jurisdiction in which the question has been considered." (*Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 108.) And, second, the opinion extends the doctrine of strict products liability beyond the limits heretofore recognized by this court.

The majority attempts to tie the fireman's rule as it has been defined in this State to the common law duties of landowners or land occupiers as determined by the status of various classes of persons upon the premises. The present-day fireman's rule in this State and in most other jurisdictions is in no way related to the duty of the

landowner or land occupier as determined by the status of the persons upon the premises. That concept was abandoned by this court in *Dini v. Naiditch* (1960), 20 Ill. 2d 406, where the general negligence principle (duty to use reasonable care) was applied as to firemen. In *Washington v. Atlantic Richfield Co.* this court, after reviewing appellate court applications of the *Dini* decision, held that while the landowner owes a duty of reasonable care to maintain his property so as to prevent injury to the firemen from causes independent of the fire, he is not liable for negligence in causing the fire. This further refinement of the duty to firemen as announced in *Dini* was necessitated by an attempt in *Washington* to extend the duty to use reasonable care as to firemen beyond the factual pattern of *Dini*.

It is true that many of the cases in this State and elsewhere in discussing the fireman's rule refer to the duty of the landowner or land occupier to the firemen. This is done, of course, because the persons sued in those cases are the landowners or land occupiers and therefore the court must discuss the duty that the defendant owes to the firemen injured. In deciding those cases, however, the court does not consider the case in the light of a special preferential status enjoyed by the defendant simply because he owns or occupies the premises. Recovery was denied to the plaintiff in *Washington* not because the defendant was a landowner but because the risk that the plaintiff encountered was one normally associated with the function of his employment. See 66 Ill. 2d 103, 109.

The majority appears to be willing to apply the fireman's rule only in the "limited context of landowner/occupier liability." This implies that the majority would not permit a fireman to recover for injuries he receives in extinguishing a fire in my automobile which I caused by negligently pouring gasoline on the hot manifold if the automobile is parked in my driveway, but that he would

be permitted to recover if my automobile is parked in the street. This appears to me not only to be extremely illogical but also to possibly present some constitutional questions. See *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60; *Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179.

Also, the majority opinion equates the statement of the general rule that a fireman assumes the risk normally associated with the function of his employment with the affirmative defense of "assumption of risk" in negligence actions or the affirmative defense known as "assumption of risk" in products liability cases. The term "assumption of risk" has been used by courts to cover a wide variety of conduct. As noted in the majority opinion it has one meaning in ordinary negligence actions (see *Barrett v. Fritz* (1969), 42 Ill. 2d 529) and another in products liability cases (see *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418). The term has recently been used by this court in still another context which may require further judicial refinement before its meaning is fully delineated. (See *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1.) The failure of the term to convey a precise meaning has led to the criticism of its use in negligence actions. (See *Barrett v. Fritz.*) The majority opinion is in error, however, in equating assumption of risk as used in the fireman's rule with the affirmative defenses in negligence and products liability cases. Under the fireman's rule assumption of risk is not an affirmative defense. It, instead, defines the duty that is owed to a fireman. In *Krauth v. Israel Geller & Buckingham Homes, Inc.* (1960), 31 N.J. 270, 273-74, 157 A.2d 129, 130-31, the Supreme Court of New Jersey stated:

> "The rationale of the prevailing rule is sometimes stated in terms of 'assumption of risk,' used doubtless in the so-called 'primary' sense of the term and meaning that the defendant did not

breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. [Citation.] Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence \*\*\* he cannot complain of negligence in the creation of the very occasion for his engagement. In *terms of duty,* it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid." (Emphasis added.)

The following cases applying the fireman's rule also consider assumption of risk as determining the question of duty and not as an affirmative defense: *Romedy v. Johnston* (Fla. App. 1967), 193 So. 2d 487; *Buren v. Midwest Industries, Inc.* (Ky. 1964), 380 S.W.2d 96; *Langlois v. Allied Chemical Corp.* (La. App. 1970), 238 So. 2d 41; *Clark v. Boston & Maine R.R.* (1917), 78 N.H. 428, 101 A. 795; *Spencer v. B.P. John Furniture Corp.* (1970), 255 Ore. 359, 467 P.2d 429.

While a fireman may not be aware of the exact nature of the danger when he responds to a call for his services, he assumes all of the natural risks that may reasonably be anticipated. He is specially trained to anticipate and to encounter the risks associated with a fire. While he may be able to recover for injuries from unexpected, hidden, or abnormal dangers caused by a defendant or known to a defendant and not disclosed, he cannot recover for injuries occasioned by dangers which his training and experience would lead him to reasonably anticipate. It is not important in the application of the fireman's rule to determine what caused the particular danger which brought about the injury. Of critical importance is whether the particular danger is one that the fireman would anticipate in the performance of his duties. *Washington v. Atlantic Richfield Co., Erickson v. Toledo, Peoria &*

*Western R.R.* (1974), 21 Ill. App. 3d 546, and *Young v. Toledo, Peoria & Western R.R. Co.* (1977), 46 Ill. App. 3d 167, all involved injuries received by firemen as the result of explosions, and in each case recovery was denied because one of the reasons for the firemen's presence was to guard against such a danger. This would also appear to be true in the present case. An exploding gasoline tank is one of the normal hazards associated with an automobile fire. One of the reasons for the firemen's presence is to guard against such a danger. In the application of the fireman's rule it is not important to determine what precipitated the explosion, whether it be careless handling of gasoline or an alleged defective or defectively installed gasoline tank. Certainly when a fire is in the known presence of contained gasoline an explosion is a possibility to be anticipated. While the risk of a gasoline tank exploding may not be reasonably anticipated and therefore not assumed by a fireman when called to extinguish a fire in a hay barn or a brush fire in a ravine or even a residential fire, it seems to me that it is a most obvious danger in an automobile fire. .

In *Spencer v. B.P. John Furniture Corp.,* the court stated:

"Gasoline and oil in service stations and explosives in a munitions plant are also to be expected, because these substances, which are dangers to fire fighters, are commonly identified with such places. Even some lack of care in the manner in which these substances are handled is to be expected. On the other hand, the unlawful storage of a 50-gallon drum of gasoline in the basement of a residence would be an example of a highly dangerous, hidden, and totally unexpected situation. If a fireman neither discovered nor learned of it, he would not assume the risk of injury from a resultant explosion." 255 Ore. 359,

365-66, 467 P.2d 429, 432.

Also, in a note entitled *Landowner's Negligence Liability to Persons Entering as a Matter of Right or Under a Privilege of Private Necessity,* 19 Vand. L. Rev. 407, 420-21 (1966), the author states:

> "Firemen are still required to assess the situation in which they find themselves, however, and may not be entitled to a warning in circumstances where they should anticipate the danger or where they can actually see it. Thus, presence of gasoline in a basement in which fire has broken out and an explosion has occurred may constitute an unusual hazard concerning which the occupier is under a duty to warn if he has opportunity to do so. On the other hand, firemen who are called to combat a fire at a garage may be held to have assumed the risk of a gasoline explosion because storage of the fuel is commonplace in garages."

Thus, I am convinced that the majority opinion misconceives the fireman's rule and has erroneously failed to apply it.

I also believe that the plaintiff in this case is not an individual who is entitled to the protections afforded under the concepts of "strict liability." This court thoroughly considered the extent of the duty of a manufacturer of an alleged defective product in *Winnett v. Winnett* (1974), 57 Ill. 2d 7, and elected, in defining the duty, not to strictly adhere to the categorization of plaintiffs as users, consumers or innocent bystanders and stated:

> "In our judgment the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used. Any other approach to the problem results in making

the manufacturer and those in the chain of product distribution virtual insurers of the product ***." (57 Ill. 2d 7, 11.)

The court continued:

"Whether the plaintiff here is an individual who is entitled to the protections afforded *** depends upon whether it can be fairly said that her conduct in placing her fingers in the moving screen or belt *** was reasonably foreseeable. A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. 'In a sense, in retrospect almost nothing is entirely unforeseeable.' [Citation.] Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur. [Citation.]" (Emphasis in original.) 57 Ill. 2d 7, 12-13.

The majority opinion, citing *Winnett,* erroneously concludes that "[w]hether a fireman fighting a fire in the course of his employment is a person to whom injury from a defective product may reasonably be foreseen is ordinarily an issue of fact ***." This statement in the opinion totally ignores the responsibility of the court to determine first the question of duty and manifests a willingness to abrogate that responsibility and surrender it to the fact finder. Also the quoted language of the opinion, in the process of abrogating the responsibility to determine duty, assumes the major premise that the product was *defective.*

The legal concept of foreseeability cannot be equated with duty. They are not coextensive. (*Mieher v. Brown* (1973), 54 Ill. 2d 539; *Dreisonstok v. Volkswagenwerk, A.G.* (4th Cir. 1974), 489 F.2d 1066; see Hoenig & Goetz, *A Rational Approach to "Crashworthy" Automobiles: The Need for Judicial Responsibility,* 6 Sw. U.L. Rev. 1, 40 (1974).) Thus it is the function of the court to determine whether a duty is owed to the fireman plaintiff in our case

before submitting the foreseeability question to the jury.

As stated in the quoted portion of *Winnett* above, the manufacturer is liable only to those individuals to whom injury from a *defective* product may reasonably be foreseen and *only in those situations where the product is being used for the purpose for which it was intended,* or for which it is reasonably foreseeable that it may be used.

In considering what constitutes a defective product this court stated in *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, that although the definitions of the term "defect" in the context of products liability law use varying language, all of them rest upon the common premise that those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected *in light of their nature and intended function.* Also, Dean Prosser has stated, "A product is to be regarded as defective if it is not safe *for such a use that can be expected to be made of it* \*\*\*." (Emphasis added.) Prosser, *The Fall of the Citadel* (*Strict Liability to the Consumer*), 50 Minn. L. Rev. 791, 826 (1966).

In *Weber v. Fidelity & Casualty Insurance Co.* (1971), 259 La. 599, 603, 250 So. 2d 754, 755, the Louisiana Supreme Court held that a product is defective if it is "unreasonably dangerous to *normal use.*" (Emphasis added.) In *Perez v. Ford Motor Co.* (5th Cir. 1974), 497 F.2d 82, 87, the court, applying Louisiana law, stated that normal use refers to the use of the vehicle, not to the type or severity of the collision encountered:

> "Thus, the controlling fact is the use to which the vehicle was being put at the time of the accident and not the accident itself. If the vehicle was being used to travel on the streets \*\*\* in the course of routine driving, it meets the 'normal use' requirement \*\*\*. The fact that it was involved in an accident or that the accident

involved uncommon occurrences does not legally preclude a claim ***."

Also, Mr. Justice Traynor of the California Supreme Court, whose preeminence in the field of products liability law is recognized in the majority opinion in this case, stated in *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 64, 377 P.2d 897, 901, 27 Cal. Rptr. 697, 701: "To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the [tool] *in a way it was intended to be used ***."* (Emphasis added.)

Also Mr. Justice Traynor stated in his article *The Ways and Meanings of Defective Products and Strict Liability,* 32 Tenn. L. Rev. 363, 372 (1965): *"Defect* becomes a fiction, however, if it means nothing more than a condition causing physical injury." And in Prosser, Torts 668-69 (4th ed. 1971), it is stated: "[T]he seller is entitled to expect a normal use of his product, and is not liable when it is put to an abnormal one. [T]he seller is not liable when the product is *** used in some unusual and unforeseeable way ***."

Under the allegations in this complaint it appears that the fire in the automobile had its origin in some set of circumstances entirely unrelated to the use of the vehicle or its malfunction. Count I of the complaint charges that the owner of the automobile had placed some highly flammable substance in the vehicle and that this had ignited. There is a host of cases which have permitted recovery for defective design of automobiles. In all of these, however, even in so-called "second collision cases," and those involving injuries to bystanders, the injuries were occasioned as a result of the use of the automobile as an automobile. Many of these cases were cited by this court in *Buehler v. Whalen* (1977), 70 Ill. 2d 51, wherein it was stated: "[T]he manufacturer's duty is to use reasonable care in the design and manufacture of its product, bearing

in mind that the intended and actual use of automobiles results in collisions." 70 Ill. 2d 51, 61.

John Hubbard, Virginia Kelly, and Russell Shew, members of the staff of the Center for Auto Safety in Washington, D.C., authored an article entitled *Fuel-Fed Vehicle Fires* which appeared in the Association of Trial Lawyers of America's magazine "Trial" in January of 1978. This article discloses that the focus of attention in testing, designing and in promulgating safety standards and regulations is on improving the safety of automobile gasoline tanks and fuel systems when the automobile is being used as an automobile; that is, the emphasis is on reducing or eliminating the hazards of fire and explosion associated with the impact of collisions. I suppose that it is possible from an engineering standpoint to construct a container for gasoline that will not explode under any circumstances, but when an automobile manufacturer places its product in the stream of commerce it is not saddled with that heavy burden. The product must be only reasonably safe considering its normal and anticipated function and use.

Inasmuch as the injury in this case was in no way connected with the use of the automobile as an automobile or to its intended or normal use, I would hold that no duty under the concepts of strict products liability was owed to the plaintiff. The automobile was being incinerated, which is a far cry from the normal use of a vehicle or even of an anticipated use of a vehicle. The law in this State and in fact in few if any other jurisdictions has not extended the strict products liability concept this far. This goes far beyond the theory of strict liability in tort and in fact appears to be at the threshold of absolute liability. I would, for these reasons, respectfully dissent from the opinion of the majority of my colleagues.

WARD, C.J., and UNDERWOOD, J., join in this dissent.