ARTHUR W. HORN, Plaintiff-Appellant, v. URBAN INVESTMENT AND DEVELOPMENT COMPANY *et al.*, Defendants-Appellees.

Second District   No. 2—86—0910

Opinion filed February 9, 1988.

Aldo E. Botti and John R. Wimmer, both of Botti, Marinaccio, DeSalvo & Pieper, Ltd., and John N. Pieper, both of Oak Brook, for appellant.

Nunzio C. Radogno, Barry L. Kroll, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellee Brooks Fashion Stores, Inc.

William G. Stone, of Bullaro & Carton, Chartered, of Chicago, for appellee Urban Investment and Development Company.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Arthur W. Horn, brought this action in the circuit court of Du Page County against defendants, Brooks Fashion Stores, Inc. (Brooks), the operator of a retail clothing store in Oak Brook, and the Urban Investment and Development Co. (UIDC), a part owner of the premises where the store was located, to recover damages for personal injuries he sustained when he slipped and fell at the store. He appeals the entry of summary judgment for defendants.

The depositions and documents on file considered by the trial court disclose, in relevant part, that plaintiff was a fireman for the Village of Oak Brook. In his complaint he alleged that he was in Brooks' store in response to an activated fire alarm. He alleged that he slipped and fell on the wet floor in the storeroom while investigating the source of the alarm and the water and severely injured himself.

When the fire department was notified, two fire engines, an ambulance and a rescue truck responded. Plaintiff was on the first engine that arrived and was wearing a protective coat, a hat and fire boots with rubber soles. Plaintiff entered the store at the front entrance. One of the clerks said there was water in the back and the firemen went to a storage room which was not open to the public. Plaintiff stated that the firemen would have gone back there in any case because that is where the fire alarm panel was, and it would be normal to check the panel.

There was no smell of smoke in the building, and no apparent fire. In a corner area of the storage room there was water dripping from the ceiling. It was coming down from a number of different spots. There were some openings in the suspended ceiling where the tiles had fallen out. A portion of the linoleum tile floor was wet. When the firemen entered the storage room, the store manager was moving stock to protect it from water dripping from the ceiling. Lieutenant Jim Bodony, plaintiff's commanding officer, checked the fire alarm panel. In order to find out what caused the alarm and to secure it, plaintiff took the stepladder that had been in the storage room and placed it beneath the area of the ceiling where the water was dripping. He went up the ladder with a flashlight and looked around the area above the suspended ceiling. He checked the sprinkler pipes to see if the sprinkler had been activated. He did not see a sprinkler

head off. The smoke or heat detectors are usually in the air-conditioning duct. Plaintiff saw a duct above the suspended ceiling. He could not determine the source of the water from that vantage point. The alarm could have been set off by either the smoke detector, the flow of the sprinklers or a pull box.

Plaintiff decided to move the ladder about five feet to get on the other side of the duct. He came down from the ladder and began to step backward, pulling the stepladder with him. As he did so he slipped on the wet floor, fell down and sustained injuries to his left knee. Plaintiff stated he believed that, subsequently, it was determined that the alarm was caused by water in the duct which caused a short circuit apparently in the smoke or heat detector and that the water had come from a leak in the roof. There was construction going on in the roof at the time. He said, however, that he was not a roofer and did not know that the roof was leaking. He said he believed the incident occurred on a dry day.

Defendants moved for summary judgment. The trial court heard argument on the motions and entered an order granting defendants' motions for summary judgment. Plaintiff filed a timely motion for rehearing which was denied. Plaintiff filed a timely notice of appeal.

Plaintiff raises two issues on appeal: (1) whether the fireman's rule (see *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881; see also *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 379 N.E.2d 281) is inapplicable to this case because it was not the function of a fireman to repair leaky roofs or broken fire alarm systems; and (2) whether entry of summary judgment for defendants was improper because there are genuine issues of material fact as to whether defendants should have anticipated the injury to plaintiff because the possessor of land owes an invitee a duty of reasonable care to protect against known or obvious dangers.

Plaintiff states that he is unaware of any Illinois cases involving the applicability of the fireman's rule to situations where a fireman is injured while engaged in a function plaintiff claims is not normally associated with fire fighting. Plaintiff directs us to cases from other jurisdictions where such recovery has been allowed, according to plaintiff. (See, *e.g.*, *Malo v. Willis* (1981), 126 Cal. App. 3d 543, 178 Cal. Rptr. 774; see also *Bonney v. Canadian National Ry. Co.* (D. Me. 1985), 613 F. Supp. 997.) Plaintiff concludes that because in the instant case he was injured while performing a function which is not one of the functions of a fireman, the fireman's rule should not prohibit his recovery of damages.

Defendants maintain that plaintiff's occupation makes no differ-

ence to the outcome of this suit. If anything, defendant maintains the rules of law, which apply to any invitee, apply with even greater force to an invitee such as plaintiff, who brought to bear his special training as a fireman to the task which he was performing at the time of the occurrence. Thus, whether the fireman's rule applies or not is not dispositive.

In any case, argue defendants, the facts of this case bring it within the scope of the fireman's rule. The rule itself derives from the traditional common law rules of landowner/occupier liability. The courts have fashioned the fireman's rule to deal with situations in which the fireman seeks to impose liability for injuries resulting from the alleged negligence that resulted in the fireman's presence on the landowner/occupier's premises. Defendants contend that where the landowner/occupier's negligence creates a condition that because of his occupation the fireman must encounter, it would be unfair to hold the landowner/occupier liable for injuries resulting from that condition which it is the fireman's job to confront. The rationale for this rule recognizes that it is the fireman's job to confront certain risks inherent to that occupation and that it would be unfair to hold an landowner/occupier liable for creating that kind of risk which is the reason for the fireman's presence on the premises. We agree.

██ █ The determination of whether a duty to warn exists is a question of law and not of fact; a business invitee has a responsibility for his own safety and must be held to be equally aware of all obvious and normal hazards incident to the premises as the possessor of the land. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 466-69, 343 N.E.2d 465.

██ Firemen, who come upon the property of a landowner to prevent the destruction of his property, are invitees. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) The owner of premises must use reasonable care and caution in keeping premises reasonably safe for use by an invitee. The liability of a possessor of land to an invitee is predicated on his failure to expect that the invitee will not discover or realize hazards incident to the premises. *Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343, 97 N.E.2d 290.

Our supreme court observed in *Fancil v. Q. S. E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538:

> "The traditional classification of those who come upon the land of another as trespassers, licensees and invitees has not provided a satisfactory means of determining the duty a possessor of land owes to public employees who come upon the land in the performance of their duties. (Prosser, Handbook of the

Law of Torts 395-96 (4th ed. 1971).) In Illinois, under such circumstances, policemen and firemen have in the past been considered to be mere licensees. However, in *Ryan v. Chicago and Northwestern Ry. Co.* (1942), 315 Ill. App. 65, the court held that the railway company was obligated to use reasonable care for the protection of a policeman who was rightfully on the defendant's right of way [*sic*]. In *Dini v. Naiditch* (1960), 20 Ill. 2d 406, this court referred to the appellate court's decision in *Ryan* and held that the owner of a building was under a duty to use reasonable care in the maintenance of his property for the protection of a fireman upon the premises fighting a fire. Subsequent to *Dini*, the law of this State has imposed upon the possessor of land, as to a policeman or a fireman who is on the premises in the performance of his official duties at a place where he might reasonably be expected to be, the same duty which the possessor of land owes to an invitee." 60 Ill. 2d at 556.

■ Thus, in the instant case if the fireman is on the premises in the performance of his official duties at a place where he might reasonably be expected to be, he is owed the same duty which the possessor of land owes to an invitee, that is, to protect him against dangerous conditions constituting an unreasonable risk of harm which the landowner/occupier should expect the invitee will not discover or realize or will fail to protect himself against; but there is no duty to warn against risks which are known or obvious (*Briones v. Mobil Oil Corp.* (1986), 150 Ill. App. 3d 41, 44, 501 N.E.2d 821 (the defendants had no legal duty to warn firemen of an open hole, and since no recovery was possible as a matter of law, summary judgment for the defendants was proper)).

■ We view the precise legal question at issue here as being whether or not a landowner/occupier, who is ordinarily not liable to a fireman for injuries resulting from fire fighting on the premises, is similarly immune from liability to a fireman who is injured after coming upon the premises in response to a false alarm. More specifically, the question is whether a fireman is in the performance of his official duty when he is looking for and investigating the source of an alarm which was not activated by fire and, therefore, would be considered a "false alarm." We believe the correct answer is in the affirmative because "[f]iremen assume, in a primary sense, all risks reasonably apparent to them that are part of firefighting." See *Armstrong v. Mailand* (Minn. 1979), 284 N.W.2d 343, 350; see Annot., 11 A.L.R.4th 583 (1982).

Investigating the source of an alarm while on the premises of a landowner/occupier, if for no other reason than to confirm the lack of fire, even though it would appear that the alarm was activated by an event unrelated to fire, is among the professional duties of a fireman. For example, in *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17, the police responded to what they initially determined was a false alarm, only to discover later that the burglars had been hiding on the roof during the officers' investigation of the false alarm. It would be unreasonable to suggest that the police were not performing their official function in looking for the source of what they concluded was a false alarm. In *Savaglio v. Board of Fire & Police Commissioners* (1984), 125 Ill. App. 3d 391, 465 N.E.2d 1065, this court noted that a police officer's presence in a lot was in routine performance of his police duties, one visit being in response to a false alarm. We conclude that when a fire fighter is injured while pursuing an activity on a landowner/occupier's premises which is reasonably related to responding to and investigating the source of an alarm, albeit false or possibly false, such pursuit is not an "undue risk" of the profession of fire fighter. *Cf. Court v. Grzelinski* (1977), 48 Ill. App. 3d 716, 721, 363 N.E.2d 12, *aff'd* (1978), 72 Ill. 2d 141, 379 N.E.2d 281.

In *Mahoney v. Carus Chemical Co.* (1986), 102 N.J. 564, 510 A.2d 4, a products liability case, the Supreme Court of New Jersey observed that considerations of fairness support the grant of immunity from suit by firemen and policemen to a citizen whose conduct is merely negligent. "Hazards negligently created are staples of the duties that firemen, and policemen are expected to perform. Although the citizen immunized is not free from fault, the quality of fault is not so severe that the grant of immunity from liability for injuries sustained by firemen and policemen in the ordinary course of their duties offends our common sense of justice." (102 N.J. 564, 573-74, 510 A.2d 4, 9.) Since we view coming onto a landowner/occupier's premises, while responding to a fire alarm activated by other than fire, is in the ordinary course of a fire fighter's duty, it would appear to be the "inherent risks of the calling." (See *Krauth v. Geller* (1960), 31 N.J. 270, 273-74, 157 A.2d 129, 131.) Likewise, sustaining injury while on premises in response to false alarms is a risk "normally associated with the function of a firefighter" which a person assumes when entering upon that employment. See *Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 361 N.E.2d 282.

Plaintiff relies upon this court's opinion in *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 478 N.E.2d 603, that the fireman's rule

does not preclude recovery by a police officer who is injured in a squad car accident while in route to the sixth false alarm in four months at Hinsdale Federal Savings and Loan Association. The defendants Hinsdale and a customer, who was the mother of the child who set off the false alarm as he had done with regard to the immediately previous false alarm, invoked the defenses of the fireman's rule. This court held that neither defendant was entitled to protection of the fireman's rule.

We conclude that *Duncan* is distinguishable from the instant case on its facts since the police officer was not injured on the premises of Hinsdale; the case did not involve principles of premises liability as in the instant case. There the officer was not injured on the premises of Hinsdale Federal, the landowner/occupier but, rather, was presumably injured on the public way en route to the premises. Further, the defendant mother of the child was not a landowner/occupier in any event. As the *Duncan* court noted "the fireman's rule is circumscribed by its limited context of landowner/occupier liability." *Duncan*, 133 Ill. App. 3d at 201-02, 478 N.E.2d at 614, citing *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 148, 379 N.E.2d 281.

■ Our analysis of plaintiff's arguments concerning the defense of the fireman's rule subsumes the resolution of his second argument. The argument is that there was a genuine issue of material fact precluding the entry of summary judgment. The issue of fact, according to plaintiff, was whether defendants should have anticipated an injury to the plaintiff. However, as the court in *Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, 459 N.E.2d 1382, cited by plaintiff, and cases cited therein hold, while the possessor of land has a duty of reasonable care to a business invitee, that duty does not extend to obvious dangers the invitee would be expected to discover and to avoid by his own efforts. (121 Ill. App. 3d at 650; *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468, 343 N.E.2d 465; see also *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 639-40, 381 N.E.2d 709.) In the latter cases, the *Piper* court noted, liability was denied because the injuries occurred to experienced workmen carrying out their work. Plaintiff's reliance on those cases is misplaced since, in the instant case, an experienced workman, a fire fighter, was injured while carrying out his work, looking for the cause of the alarm and confirming the lack of fire. See 121 Ill. App. 3d at 651-52.

Nor are we persuaded by plaintiff's reliance upon *Armagast v. Medici Gallery & Coffee House, Inc.* (1977), 47 Ill. App. 3d 892, 365 N.E.2d 446, where a milkman, making a delivery to a restaurant, fell through an open trapdoor of which he was aware from the previous

day. While acknowledging that *Armagast* involved a contributory negligence analysis, plaintiff maintains it is apposite to the instant case and that summary judgment here, similarly, should be denied. However, for the reasons stated by plaintiff, we find *Armagast* inapposite as it deals exclusively with the duty of the plaintiff and not that of the landowner/occupier as in the instant case. Further, we find no cases where the fireman's rule has been extended to bar suits by vendors and deliverymen, such as a milkman, and in those cases the general rule with regard to the duty owed by a landowner/occupier to an invitee applies. See *Allgauer v. Le Bastille, Inc.* (1981), 101 Ill. App. 3d 978, 428 N.E.2d 1146.

The judgment of the circuit court of Du Page County entering summary judgments for defendants is affirmed.

Affirmed.

REINHARD and HOPF, JJ., concur.