9 F.3d 112
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roberta A. GROSSMAN, Administratrix of the Estate of William
Hardy, Plaintiff-Appellant,
v.
Robert HARDY, an individual and Dolores Hardy, an
individual, Defendants-Appellees.
 No. 92-3795.
 United States Court of Appeals, Seventh Circuit.
 Argued May 11, 1993.
Decided Oct. 15, 1993.
 
 Before CUMMINGS, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff-appellant Roberta R. Grossman, administratrix for the estate of William T. Hardy, appeals the district court's grant of the defendants' motion for summary judgment of her claim for negligence against Robert and Dolores Hardy. The negligence suit was premised on the injuries William Hardy suffered in a fall at the home of his brother, Robert Hardy. The district court dismissed the action finding that the maintenance of the diversity suit would result in a breach of the administratrix's fiduciary duties to the heirs of William Hardy. We affirm.
 
 I. BACKGROUND
 
 2
 The litigation at hand stems from an accident that occurred on the night on May 6, 1985, in the home of Robert and Dolores Hardy. At 1:00 a.m., William Hardy, who was spending the night in his brother Robert's home, awoke and arose to use the bathroom. He was unable to locate the light switch in his bedroom, and ventured forth out into the hallway, groping along the walls looking for a light switch. He had slept in the same bedroom several months earlier and was familiar with the layout of the house including the location of the bathroom as well as the staircase near the bathroom. While searching for a light switch in the dark, he somehow misstepped and tumbled down the staircase. There is no evidence in the record suggesting that he tripped on or fell over any object in the hallway or on the stairs, nor is there any evidence that the light switches or lights themselves were not operational. William Hardy's brother and sister-in-law found him in a heap at the bottom of the stairs and called an ambulance which transported him (William) to a V.A. Hospital, where he incurred some $5,250.00 in medical expenses.
 
 
 3
 Two years later, on April 30, 1987, just prior to the expiration of the statute of limitations, William Hardy filed suit against his brother and his brother's wife for negligence in the Circuit Court of LaSalle County, Illinois. Two years after filing the suit, William Hardy died in an unrelated car accident in Texas. Robert Hardy, acting as administrator of William Hardy's estate in Illinois, settled the estate and distributed all of its assets. After William Hardy's death, his attorneys moved for a voluntary nonsuit in the negligence action which the trial court granted without prejudice to the plaintiff's estate.
 
 
 4
 On February 1, 1991, a Texas probate court appointed Catherine O'Rourke, William Hardy's niece, to be the temporary administrator for William Hardy's estate in Texas. Among the assets of the estate she listed was the instant litigation. O'Rourke refiled the negligence complaint against Robert and Dolores Hardy in federal court alleging the same cause of action that William Hardy's attorneys dropped in Illinois state court after his death.[1] O'Rourke subsequently decided that she did not wish to continue as the permanent administrator of the estate and Roberta R. Grossman, an attorney at the firm which prepared the pleadings for O'Rourke's appointment, took it upon herself to become the administrator.
 
 
 5
 The defendants Robert and Dolores Hardy filed a motion for summary judgment on February 14, 1992. In support of their motion, the defendants filed an affidavit from Robert Hardy, a second affidavit from Mary Lou Smith, William Hardy's half sister, a third affidavit from Leona Clark, his other half sister, and a fourth affidavit from Thomas Hardy, William Hardy's brother. Robert Hardy's affidavit stated in part:
 
 
 6
 "3. All of the assets of William T. Hardy, except for the cause of action at issue in the instant case, were distributed through the Illinois estate. The Illinois estate of Mr. William T. Hardy has now been closed.
 
 
 7
 4. The affiant does not wish to pursue the claim brought on behalf of Mr. Hardy's estate in the instant lawsuit."
 
 
 8
 The three other affiants all alleged that they were the brothers or sisters of the decedent, that they were each "heirs of William T. Hardy" and that each of them "does not want to pursue the claim brought upon behalf of Mr. Hardy's estate in [Grossman's suit]."
 
 
 9
 On August 6, 1992, the federal trial court granted the defendants' motion for summary judgment reasoning that:
 
 
 10
 "The decedent's attorneys are the sole moving force behind the instant litigation and that counsel's efforts to prosecute this suit are merely an effort to protect the attorneys' lien rights. In view of the foregoing, the court cannot but decide that the estate of William Hardy, as administered by Roberta Grossman, has no right to continue on. To do so would be a violation of administratrix' fiduciary duties to the heirs of the estate of William Hardy."
 
 II. DISCUSSION
 
 11
 This case presents the issue of whether Roberta Grossman has presented a genuine issue of material fact sufficient to preclude the entry of summary judgment in favor of Robert and Dolores Hardy. "We review de novo a district court's grant of summary judgment." United States v. First National Bank, 957 F.2d 1362, 1366 (7th Cir.1992). We have stated that, "summary judgment should be granted only when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law...." Id. (quoting Central States, Southeast, and Southwest Areas Pension Fund v. Jordan, 873 F.2d 149, 152 (7th Cir.1989).
 
 
 12
 The reviewing court is not bound by the reasoning of the lower court. In Wallace v. Greer, 821 F.2d 1274 (7th Cir.1987) we stated that "we may affirm on any ground that finds support in the record." Id. at 1277 (quoting Miller v. Gateway Transportation Co., Inc., 616 F.2d 272, 275 n. 7 (7th Cir.1980); see also Reinstine v. Rosenfield, 111 F.2d 892, 894 (7th Cir.1940) (stating that "from time immemorial courts of appeal have been authorized to affirm the rulings of lower courts for any valid reason based on the evidence, although not assigned."); Helvering v. Gowran, 302 U.S. 238, 245-46 (1937); Maguire v. Marquette University, 814 F.2d 1213, 1216 (7th Cir.1987); 10 C. Wright and A. Miller, Federal Practice and Procedure Sec. 2716, at 440 (1973).
 
 DUTY
 
 13
 Without a scintilla of evidence and based on nothing but mere speculation, Roberta Grossman alleges that Robert and Dolores Hardy's negligence led William Hardy to fall down the stairs of their house. Specifically, in her first amended complaint, Grossman claims that the defendants failed (1) "to keep the landing at the top of the staircase lighted at all times," (2) to maintain the stairs and hallway in a "reasonably safe condition," and (3) "to warn William T. Hardy of the darkness of the hallway."
 
 
 14
 In order to prevail in a cause of action alleging negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach. O'Brien v. Rogers, 555 N.E.2d 1005 (Ill.App. 5th Dist.1990) (citing Romano v. Bittner, 510 N.E.2d 924, 929 (Ill.App.1987)). Thus an owner of land is not an insurer against accidents occurring on the premises; liability must be predicated upon negligence on the part of the owner. Stambaugh v. Central Illinois Light Co., 356 N.E.2d 148, 151 (Ill.App.1976); Beccue v. Rockford Park District, 236 N.E.2d 105 (Ill.App.1968).
 
 
 15
 A possessor of land has a duty to invitees on his premises. O'Brien at 1011. Section 343 of the Restatement (Second) of Torts (1965), which Illinois has incorporated into its case law, sets forth the duty a landowner owes to invitees. See Courtney v. Allied Filter Engineering, Inc., 536 N.E.2d 952, 956 (Ill.App.1989); Dean v. Talman Homes Federal Savings & Loan, 516 N.E.2d 951, 955 (Ill.App.1987). Section 343 provides:
 
 
 16
 "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
 
 
 17
 (a) knows or by the existence of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
 
 
 18
 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
 
 
 19
 (c) fails to exercise reasonable care to protect them against the danger."
 
 
 20
 Restatement (Second) of Torts Sec. 343, quoted in Diebert v. Bauer Bros. Constr. Co., Inc., 566 N.E.2d 239, 241 (Ill.1990).
 
 
 21
 The plaintiff claims that for purposes of appeal, the defendants have admitted that they owed the decedent, William Hardy, a duty of reasonable care and that they breached that duty. The plaintiff's assertion, while not supported by law, is based on the fact that the defendants argued only proximate cause and not duty in their appellate brief. The issue of duty was thoroughly briefed before the trial court and we may affirm on that basis. See supra at 6-7. In Shaffer v. Mays, 489 N.E.2d 35, 37 (Ill.App.1986), the Illinois appellate court noted that "the Supreme Court has held that duty is a question of law for the court while breach (here negligence) is, within limits a question of fact for the trier of fact." See also Diebert, 566 N.E.2d at 243 ("[w]hether defendant owes plaintiff a duty of care is a question of law for determination by the court").
 
 
 22
 A landowner has no duty to warn against risks which are known and obvious. Horn v. Urban Invest. & Dev. Co., 519 N.E.2d 489, 492 (Ill.App.1988); Greenlee v. First National Bank, 529 N.E.2d 723, 726 (Ill.App.1988) (holding that plaintiff should have noticed the lack of a hand rail on the stairs and by reasonable inspection could have discovered rotten wood on the stairs, and thus defendants cannot be held liable for failure to disclose an obvious defect). Several exceptions to this general rule of landowner liability exist, however, and the plaintiff claims this case falls within the following exception to Sec. 343:
 
 
 23
 "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."
 
 
 24
 Restatement (Second) of Torts Sec. 343A(1). Comment e to Sec. 343A states that "[r]easonable care on the part of the possessor ... does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." Id.
 
 
 25
 Comment f explains that a possessor of land may have a duty of care to an invitee who knows of danger on the possessor's premises if the possessor "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts Sec. 343A, Comment f. Comment f contains the following illustrations:
 
 
 26
 "(2) The A department store has a weighing scale protruding into one of its aisles, which is visible and quite obvious to anyone who looks. Behind and about the scale it displays customer goods to attract customers. B, a customer, passing through the aisle, is intent on looking at the displayed goods. B does not discover the scale, stumbles over it, and is injured. A is subject to liability to B.
 
 
 27
 (3) The A drugstore has a soda fountain on a platform raised six inches above the floor. The condition is visible and quite obvious. B, a customer, discovers the condition when she ascends the platform and sits down on a stool to buy some ice cream. When she has finished, she forgets the condition, misses her step, falls, and is injured. If it is found that this could reasonably be anticipated by A, A is subject to liability to B."
 
 
 28
 Id.
 
 
 29
 The defendants contend that William Hardy was familiar with his brother's house and was not distracted nor is there any evidence that he forgot what he knew. Thus they maintain that because the decedent had slept as an overnight guest in the same room less than eight months earlier and in the meantime neither the location of the light switches nor the premises had been altered, there was no need to warn him of the location of the stairway or that the lights would be out in the middle of the night. "Reasonable care on the part of the possessor ... does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." Id. Sec. 343A, comment e. In contrast, the plaintiff asserts that the defendants owed the decedent a duty of reasonable care to warn him, either verbally or by way of illumination, of the stairway at the end of the second floor hallway.
 
 
 30
 We do not believe that a hallway and a stairwell constitute things that can be characterized as unreasonably dangerous (they are obvious), moreover; any inherent danger in the hallway was alleviated by the fact that there were lights strategically located to illuminate William Hardy's bedroom, the hallway and the staircase. Robert and Dolores Hardy satisfied any duty they owed to William Hardy by having sufficient lighting to illuminate the upstairs bedroom and hallway. There is no Illinois case or case of any other state that we can find requiring a homeowner to turn lights on in the middle of the night for a guest who is familiar with the home and chooses of his own free will to walk in the dark. In Garner v. Louisiana Farm Bureau Mut. Ins. Co., 281 So.2d 860 (La.App.1973), the Louisiana Court of Appeals reached the same conclusion we reach today in a case with similar facts. Garner involved a six-year-old boy who along with his siblings and mother were at the boy's grandfather's home for a fish fry. About dusk, the boy entered his grandfather's home through the utility room and closed the door behind him. Attempting to reach the light switch on the opposite wall or to open the door on the opposite wall, the boy struck his eye on the corner of a dresser-like piece of furniture located in the utility room. The plaintiff alleged that the defendant grandfather breached a duty of care by failing to have the lights turned on in the utility room. The court determined that the grandfather owed the boy, as an invitee, the duty of reasonable and ordinary care holding:
 
 
 31
 "We have been cited to no statutory or jurisprudential authority for the proposition that the owner of premises must make certain that lights are turned on in all portions of the house to be used by invitees, even small children.... [T]he lights could have been easily turned on by the injured child or by any other person desiring to do so.
 
 
 32
 "We do not mean to imply that we find contributory negligence on the part of the injured child.... However, we do find that the owner of the premise had taken reasonable and ordinary care to protect invitees by placing lights with light switches in a room of the house which contained no particular hazardous or dangerous features. Certainly it can not be maintained that the mere placement of a dresser or other customary pieces of furniture in a utility room constitutes the establishment of a hazard.
 
 
 33
 "Therefore, we find no negligence on the part of the grandfather...."
 
 
 34
 Id. at 862-63. Likewise, in the instant case, we do not believe that Illinois courts would impose a duty on a homeowner to have lights on in the middle of the night in areas of a home where there are no hazards presenting an unreasonable risk of harm to an invitee who is familiar with the house such as William Hardy.
 
 
 35
 The plaintiff claims that once the owner introduces a man-made object onto his property, such as a house, a pool, or any other pitfall, a nearly century old line of cases in Illinois hold that a plaintiff may recover when darkness conceals that condition. However, in the cases cited by Grossman to support this proposition, the plaintiffs were either unfamiliar with the setting or there was some defect in the construction or maintenance of the building which the darkness concealed. In the instant case, however, William Hardy had previously spent the night in the same bedroom at his brother's house and there is no evidence contained in the record that Dolores or Robert Hardy's house was defective in its construction or maintenance. Moreover, illumination of the area was possible had the claimant taken the time to activate the light switches.
 
 
 36
 In Geraghty v. Burr Oak Lanes, Inc., 125 N.E.2d 47 (Ill.1955), a twenty-two year-old man was entering a bowling alley after dark. He tripped over a railroad tie and a fallen telephone pole that were obscured by weeds and dislocated his shoulder. It "was the first time he had driven to the bowling alleys in his car and it was the first time he had ever been in the parking lot." Id. at 49-50. There were no lights of any kind in the parking lot. Id. The court found for the plaintiff because "[i]t was so dark that plaintiff, although looking where he was going, could not see the pole and tie concealed in the grass and weeds. Plaintiff was a stranger in the parking lot and did not know of the existence of the pole and tie." Id. at 52. The case before us bears no resemblance to Geraghty because William Hardy was familiar with Robert Hardy's home, there was no hazardous condition present, and William Hardy could have illuminated the hallway merely by activating the light switch.
 
 
 37
 In Packard v. Kennedy, 124 N.E.2d 55 (Ill.App.1955), relied on by Grossman's counsel at oral argument, the plaintiff attempted to enter her employer's house from an unlit back entrance which she had never entered before. The court stated, "[d]efendant Eva Kennedy's admission that if she knew plaintiff was coming in the back way she would have had the light on, and would have been careful to warn her, reveals that defendant regarded this condition as hazardous to persons not familiar with the construction." Id. at 62. The court found that the absence of lighting coupled with the construction of the steps rendered the back entrance a hazardous pitfall. Id. The present case is distinguishable for the same reasons as stated above: William Hardy was familiar with the home and there were no unreasonably dangerous pitfalls.
 
 
 38
 The plaintiff in Pauckner v. Wakem, 83 N.E. 202 (Ill.1907), fell down an elevator shaft in a warehouse where he was working. "Appellee, desiring to attend to a call of nature, asked permission ... to leave his work and to attend to his needs. This [request] was granted, and appellee turned self on the aisle or pathway, which was a narrow, irregular way between piles of goods, coffee bags, etc. Appellee was unacquainted with the room ... In passing down south along the north and south aisle he fell into an unprotected elevator shaft and was severely injured." 83 N.E. at 203 (emphasis added). While "the light around the elevator shaft was very dim," it was not the quality of the light "that caused the plaintiff to fall" but that "the entrance [to the shaft] was unguarded." Once again, liability was premised on the plaintiff's unfamiliarity with the surroundings and the presence of a dangerous pitfall, i.e. an unguarded elevator shaft. Neither of these conditions were present in the case before us.
 
 
 39
 Finally, in Pollard v. Broadway Central Hotel Corp., 187 N.E. 487 (Ill.1933), while walking through a hallway in the lobby of a hotel for the first time, a woman tripped and injured herself. The court found that "[s]he had never been in this hotel before [and] she never did go out of the hotel or enter the hotel by means of the Broadway street entrance." Id. at 489. "[B]y reason of the absence of light [she] did not know and was unable to ascertain the existence of the offset in the floor, and as a result thereof she unavoidably tripped and fell at the offset of the passageway and was thereby thrown to the floor and injured." Id. at 488. The floor of the corridor had "the appearance of a smooth, level, polished surface, but ... the floor, as originally constructed and maintained, contained an offset across the passageway which was not easily discernible, which offset constituted a defective and dangerous condition for persons walking through the passageway...." Id. at 488-489 (emphasis added). The court held for the plaintiff because she had never been in the passageway and it was defective as well as dangerous.
 
 
 40
 In each of the four cases above, the absence of illumination served to obscure an inherently dangerous condition. There was a defect in either the construction or the maintenance of the structure which caused the plaintiff's injury. In the record before us, however, there was no defect in either the maintenance or the construction of Robert and Dolores Hardy's house, thus the darkness in the upstairs hallway obscured nothing that was inherently dangerous. The following exchange, which took place during William Hardy's deposition underscores this point:
 
 
 41
 Q. Was there anything on the top of those steps or around the steps that caused you to fall?
 
 
 42
 A. No.
 
 
 43
 Q. What is it that caused you to fall down the steps?
 
 
 44
 * * *
 
 
 45
 * * *
 
 
 46
 THE WITNESS: Looking for light switches and took one step too many off the floor.
 
 
 47
 William Hardy's deposition testimony convinces us that there was no hazard other than darkness and darkness alone under the circumstances is an insufficient basis for liablity. Additionally, in each of the four cases the plaintiff cites as precedent, the plaintiff was unfamiliar with the surroundings in which the accident took place. In the instant case, however, William Hardy testified in his deposition that he had been to his brother's house before and slept in the same bedroom just months prior to the accident. Thus we find no basis in the record to impose liability on the defendants who simply failed to leave the lights on in the middle of the night for a guest who was well acquainted with the home.
 
 
 48
 The four cases relied on by the plaintiff reveal that there may be a duty to light imposed upon landowners whose guests lack knowledge of the premises and some hazard or pitfall exists. These cases do not imply a correlative duty upon homeowners to turn on lights in the interior of their house when guests are familiar with the location and no extraordinary hazards or pitfalls are present.
 
 III. CONCLUSION
 
 49
 As we have explained above, there is not one scintilla of evidence establishing negligence in this case. William Hardy was familiar with the premises, he had previously slept in the very same room, there were no unreasonable hazards in the hallway, and William Hardy testified that he did not trip over anything. Despite the fact that the lights in his room and the hallway were operational and he could have activated them, the decedent wandered out into the dark hallway and misstepped causing him to fall down the staircase. It is well-known and accepted in American jurisprudence that there is not a remedy at law for every injury. Some injuries are the result of unavoidable accidents in which it is inappropriate to impose liability on the alleged tortfeasor. See Georges v. Mallare, 310 N.E.2d 754, 750 (Ill.App.1974); McKinney v. Evans, 164 N.E.2d 822 (Ill.App.1960); Restatement (Second) of Torts Sec. 8.
 
 
 50
 The district court found that, "[t]he decedent's attorneys are the sole moving force behind the instant litigation and that counsel's efforts to prosecute this suit are merely an effort to protect the attorneys' lien rights." We are in agreement with this assessment, for each of the four living heirs filed an affidavit stating that they did not wish Grossman to litigate the claim. Grossman, the plaintiff, by pursuing this case, only sought to enrich herself as administrator of the estate. Not only did she harass the Hardy family with a needless lawsuit but she also further clogged the court system, delaying the resolution of other worthwhile cases. In light of our decision affirming summary judgment for the defendant, we see no reason to address the plaintiff's request for sanctions against the defendant.
 
 
 51
 AFFIRMED.
 
 
 
 [1]
 Even though nearly five years had elapsed since the accident occurred, the complaint in federal court was timely under Illinois law because after the Illinois trial court granted the voluntary dismissal in the state action, Hardy's estate had one year to refile the complaint under Ill.Rev.Stat. ch. 110, par. 2-1009. Land v. Greenwood, 478 N.E.2d 1203, 1205 (Ill.App.1985) ("[i]t has been established that a plaintiff may dismiss his suit voluntarily and refile within a year, if done prior to trial or hearing, notwithstanding the running of the statute of limitations or plaintiff's lack of diligence in obtaining service") citing LaBarge, Inc. v. Corn Belt Bank, 428 N.E.2d 711 (Ill.App.1981)