RAYMOND SMITHERS *et al.*, Plaintiffs-Appellants, v. CENTER POINT PROPERTIES CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—99—3064

Opinion filed December 28, 2000.—Rehearing denied February 5, 2001.

John B. Schwartz and David J. Spira, both of John B. Schwartz & Associates, of Chicago, for appellants.

Schiff Gorman & Krkljes (Elliot R. Schiff and Thomas G. Gorman, of counsel), and Thomas W. Weber, of Wiedner & McAuliffe, Ltd., both of Chicago, for appellees.

JUSTICE SOUTH delivered the opinion of the court:

On December 29, 1995, at approximately 9 a.m., plaintiff, Raymond Smithers, went to 11701 S. Central in response to a "full flow water alarm." Plaintiff was with the Alsip fire department for 30 years and eventually became the deputy chief. While at the fire department, plaintiff's duties included running the fire prevention bureau and the inspection department. He conducted hundreds of commercial, industrial and residential fire inspections during his employment with the fire department. He was also responsible for checking the exterior of the buildings to insure that the post indicator valves (PIVs) (sectional valves in the sprinkler line where the water goes into the building that allow a portion of the system to be shut down without closing down the entire system) were not blocked.

The address of the fire alarm, 11701 S. Central, is part of a warehouse complex that extends from 11601 to 12001 S. Central in Alsip, Illinois. The warehouse is a large, single structure divided into four sections, each containing a different business. Universal Furniture Industries, Inc. (Universal), is a tenant at 11601 S. Central, and Dart Warehouse Corporation (Dart) is a tenant at 11701 S.

Central. Center Point Properties Corporation (Center Point) owns these two sections of the warehouse. Anixter Brothers, Inc. (Anixter), is a tenant at 11801 S. Central and Midway Realty Associates (Midway) is the owner. American Drug Stores, Inc. (American Drug), is a tenant at 12001 S. Central and American National Insurance Company (American National) is the owner.

The entire warehouse shares a common underground circulating loop-type water supply and fire control system. There are two PIVs located behind 11601 S. Central and 11701 S. Central. The valves are connected to a line that goes into the building and are fed from the circulating loop.

After arriving at the warehouse, plaintiff went into the warehouse at 11601 S. Central. Finding no problems within the warehouse that could have triggered the alarm, plaintiff proceeded out the rear exit of 11701 S. Central to check the leak. As he exited the building, he observed a sheet of ice extending 60 to 70 feet from the building and out into the area of the PIVs. During plaintiff's deposition, he testified that he noticed an ice accumulation near the PIVs, and he observed water leaking from the PIVs on December 20, 1995. As plaintiff came within approximately five feet of the PIVs, he fell and was injured.

At the time of the accident, plaintiff was wearing his fireman's uniform, a fire jacket and rocky eliminator boots. Plaintiff testified during his deposition that these boots were purchased by the fire department and were worn by firemen "to prevent people from slipping and falling."

Plaintiff and other members of the Alsip fire department had responded to other safety-related problems at this property prior to the date of the accident on December 29, 1995. Plaintiff had been out to this warehouse a total of 50 times and had responded 10 times in the previous year to similar types of alarms at this location. In particular, on November 24, 1995, plaintiff was notified that there was ice building up behind the two buildings in the area where he later fell. On December 4, 1995, plaintiff personally observed water coming up from the PIVs. On December 20, 1995, plaintiff called a special meeting with all of the occupants to address "life safety problems" associated with water leaking from the PIVs.

Plaintiff and his wife filed a complaint against Centerpoint, Lakeshore Associates, American National, Universal, Anixter, American Drug and Midway for injuries sustained from the fall. Dart was later dismissed as a party defendant. Plaintiff's wife requested damages for loss of consortium. On December 24, 1997, plaintiff filed his first amended complaint in which he joined defendant Commodore Environmental Services, Inc.

On February 18, 1999, plaintiffs filed a second amended complaint alleging negligence by defendants due to their failure to maintain the fire suppression system. Plaintiffs also refer to several covenants entered into by defendants in a 1973 easement agreement. The agreement provides in pertinent part:

"Grant of Easement:

\*\*\* The easement area shall be kept open and unobstructed for the benefit of, and may be used in common by, all the respective owners and occupants present and future, of the respective premises above described and the several buildings erected thereon, for ingress and egress by pedestrian and vehicular traffic to and from said lands and buildings; and each said owner shall share in all costs and expenses of maintaining said easements, including without limitation, all cleaning and janitorial work, snow removal, repairs and replacements, including co-surfacing, and all other functions necessary for the proper maintenance and upkeep of the easement area.

Grant of Easement for Water Tank System:

\*\*\* The easements granted herein shall be for laying, operating, maintaining, replacing, in perpetuity, of eight inch (8) water mains running from said water tank along the courses set out in Exhibit A, and maintaining, repairing, operating, filling and refilling of said water tank; all parties shall have the right to tap such mains at locations falling within their own premises for the purpose of connecting sprinkler systems to any buildings now or hereafter located on each party's respective premises. Said easements shall be for the benefit of all the respective owners of each of the afore described [11601 -- 12001 S. Central] parcels and the occupants thereof, present and future; and said water tank shall be operated, used and maintained by the First Party in common with all parties hereto, their heirs, successors and assigns."

On March 31, 1999, defendant American National filed a section 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 1998)) motion to dismiss plaintiffs' complaint based upon the "fireman's rule," which was joined by American Drug, Center Point and Universal. On April 1, 1999, defendants Anixter and Midway filed a motion for summary judgment also based upon the fireman's rule.

On August 2, 1999, defendants' section 2—619 motion to dismiss and motion for summary judgment were granted pursuant to the fireman's rule enunciated in the *Horn v. Urban Investment & Development Co.*, 166 Ill. App. 3d 62, 519 N.E.2d 489 (1988), decision. On August 30, 1999, plaintiffs filed a timely notice of appeal.

For purposes of this appeal, the only remaining defendants are Center Point and Universal, as all other defendants have been dismissed pursuant to a settlement.

The issues raised on this appeal are: (1) whether the trial court's ruling that the fireman's rule bars plaintiff's recovery of damages for personal injuries was proper; (2) whether the defendant/owners waived the protection of the fireman's rule by voluntarily entering into covenants to provide pedestrians and vehicles with safe means of accessing their premises; and (3) whether the "deliberate encounter exception" and the public policy requiring landowners to maintain their premises in a reasonably safe condition for their invitees mandate abrogation of the "fireman's rule."

■ Review of a trial court's order granting a section 2—619 motion to dismiss or a motion for summary judgment is *de novo*. *Groce v. South Chicago Community Hospital*, 282 Ill. App. 3d 1004, 669 N.E.2d 596 (1996) (motion for summary judgment); *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 713 N.E.2d 543 (1999) (section 2—619 motion to dismiss).

Plaintiffs argue that the fireman's rule not only relieves a landowner of liability for risks of apparent dangers associated with a fire but that it is a "free floating proposition immunizing a landowner or occupier of all risks associated with fire fighting." They assert that the risks a fireman encounters must be obvious to the firefighter or, if not obvious, ones that the firefighter should recognize as dangers associated with a fire. As such, this rule does not apply to "latent conditions" of which the firefighter would be unaware.

Plaintiffs further argue that the *Horn* decision improperly expands the fireman's rule. They argue that applying the fireman's rule to *any* activity that is related to fire fighting in general, but that is not related to *fighting an actual fire*, permits the rule to be expanded into a general immunity for landowners against claims brought by firefighters.

Defendants argue that the fireman's rule precludes plaintiffs' cause of action because, pursuant to *Horn*, a landowner is immune from liability to a fireman who in the performance of his official duties is injured after coming upon the premises in response to a false alarm. *Horn*, 166 Ill. App. 3d at 67, 519 N.E.2d at 492. They urge the fireman's rule is not a general proposition immunizing landowners from all liability to a fireman, but that the rule applies in cases where a plaintiff's injuries occurs in the furtherance of his duties as a firefighter.

■ Under common law, a fireman was considered a licensee to whom a landowner owed no duty, except to refrain from willful or wanton misconduct. As time progressed, exceptions to the general rule were carved out and cases began to classify firemen as "invitees" or "business invitees." In *Dini v. Naiditch*, 20 Ill. 2d 406, 170 N.E.2d 881

(1960), however, our supreme court avoided these labels and ruled that landowners owed firemen a duty of reasonable care to keep their premises safe. Although Illinois' interpretation of the fireman's rule, starting with *Dini* and proceeding through to our present cases, has varied, the underlying premise has remained intact. Cases subsequent to *Dini* have refined the rule and have generally concluded that when a fireman enters a landowner's property to fight a fire, he assumes the risks associated with fighting that fire, but not those risks which are unrelated to the fire. We have consistently limited recovery to those instances where the landowner/occupier breached his duty of care by failing to keep the premises safe so as to prevent injury to firemen resulting from causes *independent of the fire*. *McShane v. Chicago Investment Corp.*, 235 Ill. App. 3d 860, 864, 601 N.E.2d 1238, 1242 (1992). We have found no liability, however, where the defects on the landowner's premises were obvious or already known to the firefighter, even if they did not result from the fire itself. See *Coglianese v. Mark Twain Ltd. Partnership*, 171 Ill. App. 3d 1, 524 N.E.2d 1031 (1988) (we affirmed the dismissal of plaintiff firefighter's complaint which alleged that he was overcome by soot, smoke and noxious gases emitted by the burning building's interior walls, which were constructed with materials that were not fire retardant, because injuries were *not caused by circumstances independent of the fire*, but by those normally associated with the firefighting profession); *Luetje v. Corsini*, 126 Ill. App. 3d 74, 466 N.E.2d 1304 (1984) (firefighter injured when part of the chimney fell from the building because of the fire could not recover because this was *not caused by circumstances independent of the fire*).

■ The fireman's rule has also been interpreted in situations, such as the situation in this case, where a firefighter is injured on a landowner's premises while responding to a "false alarm." See *Briones v. Mobil Oil Corp.*, 150 Ill. App. 3d 41, 501 N.E.2d 821 (1986) (summary judgment affirmed on appeal where firefighter responding to an alarm at a building that had been demolished was warned about a hole that had been cut in the floor, which he fell into, that was there prior to the emergency). Once again, holding onto the underlying theory in *Dini*, we continue to hold that liability is limited to situations in which the fireman was injured by causes *independent of the emergency* that brought him to the premises or situations in which the danger is not readily apparent if it is not independent of the emergency. See *Hedberg v. Mendino*, 218 Ill. App. 3d 1087, 579 N.E.2d 398 (1991) (the court found that a cause of action had been stated because the complaint alleged that the officer was injured by a cause *independent of the emergency* he was investigating).

In *Horn*, a firefighter brought a cause of action against Brooks Fashion Stores, Inc., the operator of a retail clothing store in Oak Brook, and the Urban Investment and Development Co., a part owner of the premises where the store was located. Plaintiff's complaint alleged damages due to personal injuries he sustained when he slipped and fell while on defendants' premises to investigate the source of a false alarm. *Horn*, 166 Ill. App. 3d at 64, 519 N.E.2d at 490. At the time of the incident, plaintiff was wearing a protective coat, a hat, and fire boots with rubber soles. *Horn*, 166 Ill. App. 3d at 64, 519 N.E.2d at 490. After plaintiff arrived at the store, one of the clerks there informed him that there was water in the back storage room where the fire alarm panel was located. He and other firemen went to the storage room to check the panel first, since this was normal procedure. *Horn*, 166 Ill. App. 3d at 64, 519 N.E.2d at 490.

In the storage room they observed water dripping from different locations in the ceiling and some of the ceiling was suspended where tiles had fallen out. Attempting to investigate the source of the alarm, plaintiff took a step ladder and placed it beneath the area of the ceiling from where the water was dripping. *Horn*, 166 Ill. App. 3d at 64, 519 N.E.2d at 490. Plaintiff ascended the ladder and used his flashlight to try and determine where the leak was coming from, but could not find the source. He descended the ladder and attempted to move it to another location in the storage room. As he moved backwards with the ladder, he slipped on the wet floor and sustained injuries to his left knee. *Horn*, 166 Ill. App. 3d at 65, 519 N.E.2d at 490.

Defendants subsequently filed a motion for summary judgment based upon the fireman's rule, which was granted by the trial court. We affirmed. *Horn*, 166 Ill. App. 3d at 65, 519 N.E.2d at 490.

The specific issue in *Horn* was "whether a fireman is in the performance of his official duty when he is looking for and investigating the source of an alarm which was not activated by fire and, therefore, would be considered a 'false alarm.' " *Horn*, 166 Ill. App. 3d at 67, 519 N.E.2d at 492. It was held that although it is true that a landowner has a duty of reasonable care to keep his premises safe, this duty does not extend to obvious dangerous conditions or conditions that a firefighter would be expected to discover and avoid on his own. It was held that "when a fire fighter is injured while pursuing an activity on a landowner/occupier's premises which is reasonably related to responding to and investigating the source of an alarm, albeit false or possibly false, such pursuit is not an 'undue risk' of the profession of a fire fighter." *Horn*, 166 Ill. App. 3d at 68, 519 N.E.2d at 492.

Where the landowner's premises contains unreasonably defective conditions, of which the firefighter is unaware, and which he is not

expected to encounter in his duties as a firefighter, the landowner should not be immune from liability. Similar to an invitee, a firefighter assumes risks associated with known or obvious conditions.

■ In this case, the record indicates that plaintiff had been a firefighter for 30 years and had worked his way up to a position of deputy chief. His specific duties as a fireman were to inspect commercial, industrial and residential buildings, and to check the exterior of these buildings to make sure that their PIVs were operating effectively.

The record indicates that plaintiff was responsible for inspecting the warehouse where he fell. He had responded to many alarms at this location in the past and had responded to fire alarms 10 times in 1995 alone. During his inspections of the warehouse, not only had he personally observed ice forming around the PIVs on November 24, 1995, and water coming up from the PIVs on December 4, 1995, he had also called a special meeting to address these issues on December 20, 1995.

More specifically, on the date of the accident, plaintiff went to defendants' premises in response to a "full flow water alarm." After he determined that there was no fire, he further investigated the source of the alarm which included investigating the PIVs. Plaintiff testified that that investigation was related to his responsibilities. He further testified that he was well aware of the sheet of ice that extended from the back of the warehouse out to where the PIVs were located. Equipped in his firefighter rocky eliminator boots, plaintiff assumed the risk, carried out his responsibilities, and proceeded across the ice to where the PIVs were located. As plaintiff testified during his deposition, he knew that ice and water were risks associated with the job of a firefighter.

Given these facts, the reasoning behind the fireman's rule, *i.e.*, that a fireman assumes the risks associated with known or obvious conditions inherent in the duties of a fireman, is applicable here. One of plaintiff's specific duties as a fireman was to inspect defendants' premises for problems associated with the PIVs, and at the time of his slip and fall he was on defendants' premises in furtherance of those duties.

The facts indicate that plaintiff was aware of the ice upon which he fell, that this was not something that was uncommon in his profession or in his responsibilities as a firefighter, and that this injury was not independent of the emergency he was investigating. Therefore, the trial court's ruling that the fireman's rule bars plaintiffs' recovery was proper.

The second issue is whether defendants waived the protection of the fireman's rule by voluntarily entering into covenants to provide pedestrians and vehicles with safe means of accessing the premises.

Plaintiffs argue that defendants have voluntarily assumed a duty of care, based upon their lease agreements and a 1973 easement, to repair the fire suppression system and to provide ingress and egress to the property.

■ Section 324A of the Restatement of Torts provides in pertinent part:

"One who undertakes *** to render services to another which he should recognize as necessary for the protection of a third person *** is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

■ First, with regard to defendant Universal, they had no contractual duty to maintain the common area where plaintiff's fall occurred. Article 20 of their lease agreement states in pertinent part that: "[L]andlord shall operate and maintain the Common Areas." Article 21.2 outlines the responsibilities of the tenant. It states in pertinent part: "Tenant shall maintain and perform repairs to the parking docks, sidewalks, driveways and landscaping adjacent to the Premises to the *extent that same are not part of the Common Areas* *** ."

Further, the 1973 easement agreement states in relevant part: "Owner shall share in the costs and expenses in maintaining said easements, including without limitation, *** snow removal, repairs and replacements, including resurfacing, and all other functions necessary for the proper maintenance and upkeep of the easement area."

As such, Universal, as a lessee, had neither ownership nor control over the area on which plaintiff fell. See *Martin v. McDonald's Corp.*, 213 Ill. App. 3d 487, 492, 572 N.E.2d 1073, 1078 (1991) (the defendant had control over licensee's security procedures and defendant voluntarily undertook to provide security for licensee's employees; therefore, duty to provide security arose). According to the various agreements, the common areas were to be maintained by the landlord or owner of the premises. Therefore, Universal did not legally assume a duty to maintain the fire suppression system or to remove any ice from the premises.

Additionally, the record does not indicate that Universal volunta-

rily assumed a duty to clear the common areas of ice or snow in the past. Therefore, the record does not support plaintiffs' position that defendant Universal voluntarily assumed a duty of care to make the premises safe for plaintiff.

With respect to Center Point, the owner of the 11601 and 11701 buildings, the issue becomes whether plaintiffs have satisfied the elements outlined in the section 324(A) of the Restatement (Second) of Torts.

Plaintiffs call the court's attention to *Eichler v. Plitt Theatres, Inc*, 167 Ill. App. 3d 685, 521 N.E.2d 1196 (1988), in which we imposed liability on a landowner who had allegedly failed to clear a parking lot of ice and snow. Applying section 324(A) in that case, we stated that the lease agreement entered into by defendant provided that defendant would be responsible for removing ice and snow. *Eichler*, 167 Ill. App. 3d at 692-93, 521 N.E.2d at 1201.

*Eichler* is irrelevant in this case because it does not address the fireman's rule. That case specifically dealt with whether a landowner could voluntarily assume a duty to remove naturally accumulated snow and ice. This case, on the other hand, deals with unnaturally accumulated ice from a leaking fire suppression system which was plaintiff's job to inspect.

Both the lease agreement and the 1973 easement state that the landlord is responsible for maintaining the common areas, including "snow removal." Although it does not address ice removal, the owner of the premises had a duty to maintain the common areas.

■ Under the voluntary undertaking doctrine, the duty of care to be imposed upon the defendant is limited to the extent of the undertaking. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32, 605 N.E.2d 557, 563 (1992). Here, the 1973 easement specifically provides: "[S]aid easements shall be for the benefit of all of the respective owners of each of the afore-described parcels and the occupants thereof." Contractually, there was no indication that defendant intended to voluntarily undertake a duty of care to clear the premises of ice for the benefit of plaintiff fireman, as this easement was never intended to be for the benefit of any third party. Furthermore, this easement only mentions "snow removal," not ice removal.

We further note that plaintiffs never pled the voluntary undertaking theory in their complaint and plaintiffs have not tendered any case law to the court that stands for their proposition that, where the defendant has voluntarily assumed a duty of care, the fireman's rule should not apply. Therefore, there has been no waiver in this case, and the fireman's rule bars plaintiffs' recovery.

The third issue on appeal is whether the "deliberate encounter

exception" and public policy, requiring landowners to maintain their premises in a reasonably safe condition for their invitees, mandate abrogation of the fireman's rule.

Plaintiffs argue that the "deliberate encounter exception" abrogates the fireman's rule. They assert that pursuant to *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 706 N.E.2d 441 (1998), a person who deliberately encounters a known defect is not barred from recovery if the landowner could reasonably foresee that the person would encounter the defect.

Plaintiffs also argue that the fireman's rule must be abandoned because it detracts from the clear and overriding public policy that landowners/occupiers should maintain their premises in a reasonably safe condition for persons lawfully upon their property.

Defendant responds that *LaFever* is irrelevant because it does not address the pertinent issue in this case, *i.e.*, whether the fireman's rule bars plaintiff's recovery, and that the supreme court would have addressed this issue if it felt it was relevant.

■ In *LaFever*, the supreme court addressed the "deliberate encounter exception" to the open and obvious doctrine. In that case, the driver of an industrial waste truck brought a negligence action against the owner of a fiberglass plant for injuries sustained when he slipped and fell while servicing the plant's waste facility. *LaFever*, 185 Ill. 2d at 385-86, 706 N.E.2d at 444-45. Defendant argued that it owed no duty to plaintiff because he encountered an "open and obvious" hazard on their property. *LaFever*, 185 Ill. 2d at 388, 706 N.E.2d at 446. The supreme court disagreed with defendant and reasoned that defendant knew that fiberglass refuse in its waste facility posed a hazard to plaintiff, who had to traverse the refuse-covered ground to do his job. *LaFever*, 185 Ill. 2d at 392, 706 N.E.2d at 448. As such, defendant owed plaintiff a duty under the deliberate encounter exception to the open and obvious doctrine. The deliberate encounter exception provides that when the possessor of land reasonably expects "that the invitee will proceed to encounter the *known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk*," he may be subject to liability. Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965). The supreme court did not address the fireman's rule in that case. The court emphasized, however, that "this opinion is [not] intended to dilute or minimize the relevance of *** any other concept that may be applied when proof exists that the possessor of the property is not wholly responsible for the invitee's injury." *LaFever*, 185 Ill. 2d at 396, 706 N.E.2d at 450.

■ We find that the deliberate encounter exception does not

abrogate the fireman's rule. The duties and responsibilities of a fireman are very different from those of a refuse truck driver. " 'Hazards negligently created are staples of the duties that firemen, and policemen are expected to perform. Although the citizen immunized is not free from fault, the quality of fault is not so severe that the grant of immunity from liability for injuries sustained by firemen and policemen in the ordinary course of their duties offends the common sense of justice.' " *Horn*, 166 Ill. App. 3d at 68, 519 N.E.2d at 493, quoting *Mahoney v. Carus Chemical Co.*, 102 N.J. 564, 573-74, 510 A.2d 4, 9 (1986). The supreme court's purpose for carving out the fireman's rule was due to the unique tasks associated with the responsibilities of being a fireman. Inherent in firemen's duties is deliberately encountering certain types of dangers that are unique to their fire-fighting responsibilities. See *Court v. Grzelinski*, 72 Ill. 2d 141, 148, 379 N.E.2d 281, 283 (1978) (the rationale for the rule is based on the fact that firefighters receive specialized training to anticipate and encounter risks associated with fires; therefore, firefighter would not recover for injuries caused by dangers that his training and experience would lead him to reasonably anticipate).

We find that the fireman's rule subsumes the deliberate encounter exception, as the nature of a fireman's job is to deliberately encounter certain dangers that are known to him to be inherent in his job.

■ With respect to plaintiffs' public policy argument, Illinois courts have been very cognizant of the public policy considerations involved when dealing with the application of the fireman's rule. In *Court*, the supreme court explained the public policy behind the rule. It stated:

"This distinction evolved for two mutually supportive reasons. First, since most fires occur because of the negligence of the landowner or occupier, it was believed that the imposition of a duty to prevent fires from occurring or spreading on a person's premises would place an unreasonable burden upon the person who owned or occupied improved land. [Citations.] This public policy consideration, however, tended to undermine the general duty imposed upon landowners or occupiers to exercise reasonable care to keep their premises safe. A compromise was reached with regard to firemen, recognizing that the risk of harm from fire is inherent in a fireman's occupation." *Court*, 72 Ill. 2d at 148, 379 N.E.2d at 281.

We find plaintiffs' public policy argument misplaced as the case law has established an appropriate balance between the landowners' duties to maintain their premises in a reasonably safe condition and a fireman's assumption of risks inherent in his responsibilities as a firefighter.

Therefore, the trial court's determination that the fireman's rule bars plaintiffs' recovery was proper.

Based upon the foregoing analysis, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and BARTH, JJ., concur.